[No. 17722.  Department Two.  August 30, 1923.]

JOSEPH SCHOEMER *et al.*, *Respondents*, v. B. A. ZERAN *et al.*, *Defendants*.

UNIVERSAL SAVINGS & LOAN ASSOCIATION, *Appellant*, v. COLQUHOUN HARDWARE COMPANY *et al.*, *Respondents*.[1]

PLEADINGS (101)—AMENDMENT—DISCRETION. The discretion of the trial court in allowing trial amendments to the pleadings will not be disturbed in the absence of a showing of prejudice.

PARTIES (44)—MODE OF BRINGING IN NEW PARTIES—SERVICE OF COMPLAINT—PRIORITY OVER OTHER LIENS. The failure of an intervener in a lien foreclosure to serve his complaint in intervention upon one of the adverse parties claiming a prior lien could only affect the question of priority between them.

MORTGAGES (8)—VALIDITY—FUTURE ADVANCES. In a lien foreclosure, a mortgage which had been given to one of the claimants for future advances to be made by such claimant to complete the building cannot be sustained as to advances that were not actually made or were made for purposes not contemplated in the mortgage.

MECHANICS' LIENS (71)—MORTGAGES (8)—FUTURE ADVANCES—PRIORITY—MORTGAGES EXECUTED BEFORE COMMENCEMENT OF WORK. Under Rem. Comp. Stat., § 1132, subordinating lien claims to the lien of a mortgage for past and future advances which attached prior to the performance of the labor or furnishing of the materials, the mortgage of the claimants is superior to the lien to the extent that it represented an actual indebtedness from the owner of the property to the mortgagee.

SAME (101)—ENFORCEMENT—PERSONAL JUDGMENT—ORIGINAL UNDERTAKING—PARTIES LIABLE. A promise by a mortgagee to apply certain advances which it agreed to make to the mortgagor for the completion of a building under construction is not such a direct promise to pay to a particularly named person an existing obligation that can be enforced by parties claiming liens on the building.

Cross-appeals from a judgment of the superior court for King county, Mills, J., entered May 25, 1922, upon findings in an action to foreclose mechanics' liens, tried to the court. Affirmed on respondents' cross-

[1] Reported in 217 Pac. 1009.

appeals; reversed on appeal of Savings and Loan Association.

*Guie & Halverstadt,* for appellant.

*S. A. Keenan* and *Fred W. Catlett,* for respondents Schoemer *et al.*

*Herr, Bayley & Croson,* for respondents Holmes *et al.*

*Edward H. Wright,* for respondent Colquhoun Hardware Company.

*John W. Heal, Jr.,* for intervener Senn.

Fullerton, J.—To an understanding of the controversy involved in this proceeding, it is necessary to set forth the facts with some minuteness of detail. On November 12, 1919, one J. F. Van Hoof was the owner of certain real property, situated in the city of Seattle. There was upon the property at that time a building of some kind, which the owner desired to remodel into an apartment house. On that day he borrowed from the Universal Savings & Loan Association the sum of $8,000, which he agreed to repay in sixty monthly instalments of $170 each. The money was borrowed for the purpose of, and was used in, remodeling the building. The money proved insufficient for the purpose, and towards the end of the year 1920, Van Hoof had incurred large obligations for labor and material which he was unable to pay. Certain of these, aggregating more than $1,000, the loan company, as it was privileged to do under the terms of its mortgage, paid. There were others, however, which it did not pay, and for which liens were filed against the property. The mortgagor was also in default in the payment of the instalments due on the mortgage, and the loan company began proceedings to foreclose its mortgage.

After the institution of the proceedings, the loan company, the owners of the property, and the lien claimants entered into negotiations for a settlement of the matters. These negotiations finally reached an agreement, which was reduced to writing in the following terms:

"THIS MEMORANDUM OF AGREEMENT, Made and entered into this 26th day of November, 1920, by and between B. A. Zeran and Olga Zeran, his wife, and John F. Van Hoof, of Seattle, King county, Washington, parties of the first part, and Suess Glass Co., H. A. DuBruille; Crowe & Co., The Seattle Junk Co., B. Kincaid, Ranning & Co., Frederick & Nelson, Inc., University Plumbing Co., The Barrett Company, Insulite Products Co., Inc., Paysee Hardware Company, Belknap Glass Co., F. L. Greene Company, Puget Sound Sheet Metal Works; F. P. Linn, McLean & Edwards, William Maris, W. J. Chance, N. J. Rongerud and John McKenzie, parties of the second part; Universal Savings & Loan Association, a corporation, party of the third part; and C. L. Henry, party of the fourth part, WITNESSETH:

"THAT WHEREAS the parties of the first part are indebted to the parties of the second part and third part in a large sum of money, a statement of said indebtedness being hereto attached and made part hereof, reference being had thereto for greater certainty and marked Exhibit 'A'; and

"WHEREAS the parties of the first part are the owners of a certain apartment house located at 905 East 43rd Street, Seattle, King County, Washington, and more particularly described as follows: Lots 31 and 32 in Block B, Brooklyn Supplemental Addition; and

"WHEREAS, the parties of the first part desire to obtain from the parties of the second part an extension of time, and are willing to convey the above described property to the party of the fourth part, with power to manage, rent and control the same, together with the proceeds arising from the rental to be divided pro rata among the parties of the second part after paying

the necessary expenses of managing said property, including taxes and assessments, and after paying the party of the third part the sum of $132 per month; and

"Whereas, the party of the fourth part is willing to accept said trust;

"Now, Therefore, for and in consideration of the sum of One Dollar each to the other in hand paid, the receipt whereof is hereby acknowledged, it is mutually agreed and understood by and between all parties hereto as follows:

"(1) That the parties of the first part will convey by good and sufficient deed the following described property, to wit:

Lots 31 and 32, in Block B, Brooklyn Supplemental Addition, Seattle, King County, Washington,

to the party of the fourth part herein, and also deposit with the party of the third part the sum of One Thousand Dollars in cash, said sum to be used, together with $1,000.00 to be advanced by the party of the third part, in completing the building on the above described property and in paying the necessary labor and expenses incidental thereto, and for no other purpose. Said money to be paid promptly by the party of the third part when bills are presented to it for either material or labor properly oked by the party of the fourth part.

"(2) That the party of the second part agree that they will bring no action whatsoever against the parties of the first part for the purpose of collecting and enforcing their claims set forth in Exhibit 'A' hereto attached and made part hereof, for a period of three years; and upon the signing of this contract they will have satisfied of record any claims or liens that may now be filed in the County Auditor's Office of King County, Washington.

"(3) That the parties of the first part shall execute to the Dexter Horton Trust & Savings Bank, of Seattle, Washington, as Trustee a second mortgage to secure the payment within three years after date of the claims of the parties of the second part, as set forth in Ex-

hibit 'A' hereto attached, with interest thereon at the rate of seven per cent per annum from the date of the mortgage.

"(4)   That the party of the third part agrees that it will have dismissed that certain suit now pending for a foreclosure of a mortgage in the Superior Court of King County, Washington, known as Cause No. 144166, wherein the Universal Savings & Loan Association is plaintiff and F. J. Van Hoof, B. A. Zeran and Olga Zeran, his wife, and others, are defendants, and will in addition thereto have satisfied of record that certain mortgage made by F. J. Van Hoof to the Universal Savings & Loan Association and will advance for the use and benefit of the parties of the first part an additional sum of $1,000.00 for the purposes set forth in paragraph 1 hereof, and take from the parties of the first part a first mortgage for the sum of $10,000.00 on the above described real estate, payable monthly, in the sum of $132.00 on the tenth day of each and every month beginning March 10, 1921, in full settlement of Cause No. 144166 of the Superior Court of King County, Washington, and for the sum of $1,000.00 as above mentioned; and said mortgage to be a first and prior lien upon said premises and the income therefrom.

"(5)   That in addition to paying the taxes and local assessments and monthly payment due to the party of the third part and the other payments mentioned herein, the party of the fourth part is hereby empowered and directed to pay from any of the proceeds he shall receive from the rental of the above described property the necessary expenses of handling said property and of this trust, including a reasonable commission to any real estate agent for managing said property.

"(6)   It is expressly understood and agreed that the parties of the second part and the party of the third part shall not be put to any expense whatsoever in connection with the carrying out of the terms, covenants and conditions of this contract, renting of the property or managing the same.

"(7)　The party of the fourth part agrees that he will use his best endeavor to carry out the terms and conditions of this agreement in the renting and managing of said property to the best advantage of all parties concerned, and that after making the monthly payment provided for herein to the party of the third part upon its said mortgage mentioned in paragraph IV hereof, and paying taxes and local assessments and expenses in managing said property, he will, as soon as he shall have sufficient funds in his hands to declare a dividend, but not prior thereto, pay to the Dexter Horton Trust & Savings Bank of Seattle, Washington, as Trustee for the parties of the second part, a sum equal to 20% of their several claims as shown by Exhibit 'A' hereto attached and made part hereof; and as often thereafter as he shall receive sufficient money to declare a dividend he will continue to pay to the said Trustee a 20% dividend on the claims as shown by Exhibit 'A' and continue to do so until said second mortgage is fully paid and satisfied.

"(8)　The parties of the first part agree that they will at all times use their best endeavors to aid and assist the party of the fourth part in carrying out the terms and conditions of this contract, and that they will at no time place any obstacles in the way of the party of the fourth part.

"(9)　It is understood and agreed that the party of the fourth part after paying the second mortgage to said trustee, or at the termination of this agreement, and after he shall have been paid a reasonable compensation for his services, make to the parties of the first part a Quit Claim Deed to the above described property.

"(10)　It is expressly agreed and understood by and between all the parties hereto that this contract shall be binding upon the heirs, executors, administrators and successors and assigns of the parties hereto."

Following the execution of the agreement, the parties complied with its terms. The owners of the property executed a new mortgage to the loan company, whereupon the company cancelled of record its prior

mortgage. The lien claimants cancelled their liens and
the owners of the property conveyed it to the fourth
party mentioned in the agreement. The owners also
deposited with the loan company the sum of $1,000, to
be used in the completion of the building.

Following the execution of the agreement, work was
again started on the building. In the course thereof
materials for use in the building were purchased from
a number of dealers, and the obligations thus created
not being paid, certain of them filed liens on the prop-
erty for the amount of their advancements.

This action was begun by one of such lien claimants
to foreclose its lien. The claimant did not make parties
defendant the loan company, and certain of the lien
claimants who seem to have then had liens of record.
The loan company was brought in by one of the lien
claimants who was so named, and certain others of the
claimants intervened in the action. As the pleadings
were originally framed, and as they stood at the time
the cause was called for trial, each of the several lien
claimants simply demanded a foreclosure of his lien,
alleging it to be a first lien on the property, superior
to all other liens thereon. The loan company simply
asserted its mortgage, claiming it to be superior to
each of the several liens for the face amount thereof.
On the trial, however, it developed that the face value
of the mortgage was a larger sum than the loan com-
pany had at that time advanced upon the property;
that one thousand dollars thereof at least was to cover
the sum in that amount which the loan company had
agreed to advance for the completion of the buiding.
It developed further that the loan company had dis-
bursed this sum, together with the sum the owners had
advanced to it for the completion of the building, on
the following items:

| | | |
|---|---|---|
| Accrued interest on mtg..................................... | | $782.50 |
| Taxes .................................... | $262.94 | |
| Interest on same......................... | 7.42 | 270.36 |
| Fire insurance premiums............................... | | 250.00 |
| Allen, labor .............................. | $250.00 | |
| Libscot, labor ............................ | 30.00 | |
| Blake, labor ............................. | 25.00 | |
| Zeran, labor ............................... | 8.50 | |
| Haller, labor .............................. | 5.69 | |
| Light bill ................................ | 7.45 | |
| Drain boards ............................. | 50.00 | |
| | | 376.64 |
| Attorney's fees, foreclosure................. | $150.00 | |
| Additional attorney's fees................. | 100.00 | |
| | | 250.00 |
| Abstract company bill...................... | $40.00 | |
| Abstract company bill...................... | 38.50 | |
| Revenue stamps .......................... | 2.00 | |
| | | 80.50 |
| Commission ......................................... | | 40.00 |
| | | $2,050.00 |

This evidence went in over the objection of the loan company; it contending that the pleadings did not raise the issue, and that it had not come to the trial prepared to meet it. Thereupon certain of the lien claimants sought to amend their pleadings so as to allege the facts, and so as to charge the loan company as for a misappropriation of the funds. This amendment the court allowed, the trial judge stating that, if the loan company, at the conclusion of the evidence of the lien claimants, desired time to meet the new issue, such time would be granted it. At the conclusion of the evidence, the court asked counsel for the loan company if he desired to introduce any further evidence on the new issue presented, to which counsel answered that he could not then say, as he had had no time to inquire into the facts, or the law applicable thereto. The court thereupon took the case under advisement, and later on announced his conclusions. These con-

clusions were to the effect that it would hold all the liens to be on a parity and,

". . . . superior to the liens, claims and interests of all parties to this suit, and other persons claiming under them, except the mortgage of the defendant Universal Savings & Loan Association to the extent of $8,150 thereof, and interest thereon according to the terms of said mortgage."

The loan company, on the making of this announcement, asked that the cause be reopened, and that it be permitted to show the actual sum it had invested in the property at the time the second mortgage was executed; contending that it had, in addition to the loan evidenced by the face of its original mortgage, advanced more than one thousand dollars for the payment of labor and materials which went into the construction of the building; that all of such payments had been made prior to the time the second mortgage was executed, and prior to the time any of the lien claimants had furnished any of the materials for which their liens were filed. The court denied the application and entered a decree in accordance with its announcement.

The loan company appeals from the entire decree, and certain of the lien holders appeal from that part of the decree subordinating their liens to a part of the lien of the loan company's mortgage and from the ruling of the court refusing them a personal judgment against the loan company.

On its appeal, the loan company complains, with some emphasis, against the rulings made by the trial court in permitting amendments to the pleadings other than the one noticed in our statement of the case. But these we shall not notice at length, as we have not been able to conclude that any of them was a departure from the discretion vested in the trial court, or that they in.

any manner prejudiced the loan company in its defense. The intervenor, Senn, did not serve his complaint in intervention on the loan company, and it is argued from this fact that no judgment at all should be granted in his favor. But he did serve it on the owners of the property and on the other lien claimants, and as to these he is properly in the cause. His failure to serve the loan company would have no other effect than to subordinate his lien to the lien of the loan company's mortgage in so far as it represented an actual loan, but a greater right than this the loan company cannot claim. Both are lien holders, and as between them, it is a question of priority of lien.

We are of the opinion, also, that the trial court did not err in its holding that the appellant's mortgage was not a lien for its full face value. In its inception, it was in amount at least one thousand dollars in excess of the actual indebtedness then owing by the owners to it, and to this extent the lien claimants could subordinate it to their liens. The excess sum contemplated the making of future advances, and if these were made, the liens would be subordinated to its full face value. *Home Savings & Loan Ass'n v. Burton*, 20 Wash. 688, 56 Pac. 940. Here, we think the evidence very conclusively shows that the advancements contemplated were not made, or, what is the same thing, the advancements made for their major part were such as were not contemplated by the agreement. The agreement was to make them for labor and material to be used in completing the building on the mortgaged premises, and plainly only a small part, not more than the $150 which the trial court allowed, was made for that purpose. To argue that these expenditures were actual and necessary and contemplated by the parties to the agreement is beside the question. There is no

evidence to that effect, either introduced or proffered, and the plain terms of the agreement are to the contrary effect.

But we think the court erred in refusing the appellant permission to show that there was an actual obligation due it at the time of the execution of the second mortgage to the extent of $9,000, and in error, if the proofs justified this conclusion, in not allowing the mortgage priority over the liens in that sum plus the sum it found the mortgage company had advanced out of the remaining one thousand dollars toward the completion of the building. The principle upon which the court seems to have denied the application was not because of want of timeliness, but rather because the facts, if shown, would be immaterial; that, if there was the sum of nine thousand dollars actually due the mortgage company at the time the second mortgage was given, the second mortgage could not stand as security for a greater lien than the amount due upon the original mortgage. But with this we cannot agree. By the terms of the statute (Rem. Comp. Stat., § 1132 [P. C. § 9709]), the liens granted to laborers and materialmen are subordinate to the lien of a mortgage which has attached to the premises prior to the time such labor is performed or the materials are furnished, provided the mortgage is filed or recorded so as to constitute constructive notice. The mortgage of the loan company was, in this instance, so filed and recorded prior to the time the lien claimants commenced furnishing the materials for which the liens are claimed. The mortgage was, therefore, no special reason intervening, superior to the lien of the claimants, in so far as it represented an actual indebtedness from the owners of the property to the mortgagee. *Cutler v. Keller*, 88 Wash. 334, 153 Pac. 15, L. R. A. 1917C 1116.

What we have said in considering the appeal of the loan company sufficiently answers the first contention on the appeal of the lien claimants, namely, that they are entitled to have their liens adjudged prior and superior to the mortgage of the loan company.

Their contention that they are entitled to a personal judgment against the mortgage company, to the extent of the money agreed to be advanced and applied to the completion of the building, is founded upon the written agreement above set out. It is contended that the agreement therein made to the effect that the mortgagee and the owners of the property will advance one thousand dollars each in cash to be used in the completion of the building on the mortgaged premises and in paying the necessary labor and expenses incidental thereto and for no other purpose, inures to their benefit, and that they can sue thereon in their own right, and can recover on a showing that the advances have not been made or expended for the purposes agreed upon. This court, it is true, has a number of times decided that, where one person, for a valuable consideration, makes a promise to another to pay the debt of that other to a third person, such third person may maintain an action in his own name upon the promise. The cases so holding decided prior to the case of *Hart v. Bogle,* 88 Wash. 125, 152 Pac. 1010, will be found collected in that case. Subsequent cases where the general rule is referred to are *Horstman Co. v. Waterman,* 103 Wash. 18, 173 Pac. 733, 1 A. L. R. 856, and *Moore v. Baasch,* 109 Wash. 568, 187 Pac. 388. But an examination of the several cases in which the rule was applied will show that the promise enforced was a direct promise to pay to a particularly named person an existing obligation, not a general obligation to pay

the costs of performing a particular undertaking, such as was the promise in the present case. In the case of *Horstman v. Waterman,* we said it was not our disposition to extend the rule to new and doubtful cases and, unquestionably, to apply the rule here would extend it further than we have heretofore gone. It will be observed, moreover, from an examination of the writing on which the claimants rely that materialmen are not included in the wording of the instrument, other than by inference. There is an agreement that the money advanced shall be used in completing the building on the property "and in paying the necessary labor and expenses incidental thereto," but materialmen are not specifically named.

Our conclusion is that the decree should be affirmed on the appeal of the lien holders, but reversed and remanded on the appeal of the loan company for further proceedings. It is so ordered.

MAIN, C. J., PARKER, TOLMAN, and PEMBERTON, JJ., concur.