[No. 22646. Department One. November 20, 1930.]

ARTHUR T. FORSYTH et al., Appellants, v. NEW YORK INDEMNITY COMPANY, Respondent.[1]

[1]Reported in 293 Pac. 284.

*Frank R. Jeffrey* and *John C. Bowen,* for appellants Forsyth *et al.*

*Meier & Meagher,* for appellant Warren Webster & Co.

*Caldwell & Lycette* and *W. H. Brinker,* for respondent.

HOLCOMB, J.—This case is on appeal upon findings of fact, conclusions of law and judgment in favor of respondent upon stipulated facts. The facts as stipulated by the parties were adopted.by the trial court as its findings of fact. The only questions raised on appeal relate to the propriety of the conclusions of law drawn by the court from the stipulated facts and its refusal to sign and enter conclusions of law proposed by appellants.

The findings of fact, being somewhat lengthy, though essential to the determination of the controversy, will be summarized as briefly as possible.

About May 1, 1928, McNeal-Taylor Co. entered into a written contract with the Northern Life Insurance Company to furnish plumbing and heating for the building known as the Northern Life Tower. Pursuant to that contract, McNeal-Taylor Co. gave a contractor's bond to the Northern Life Insurance Company conditioned as follows:

"Now THEREFORE, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

"PROVIDED, however, that no suit, action or proceeding by reason of any default whatever shall be brought on this bond after twelve months from the day on which the final payment under the contract falls due.

"AND PROVIDED, that any alterations which may be made in the terms of the contract, or in the work to be done under it, or the giving by the owner of any extension of time for the performance of the contract, or any other forbearance on the part of either the owner or the principal to the other shall not in any way release the principal and the surety or sureties, or either or any of them, their heirs, executors, administrators, successors or assigns from their liability hereunder, notice to the surety or sureties of any such alteration, extension or forbearance being hereby waived."

These appellants furnished materials to the contractor, and certain balances therefor remained due them. On some day prior to May 8, 1929, McNeal-Taylor Co. became and was in failing circumstances and its creditors were threatening to take legal proceedings against it; thereupon respondent undertook to and did direct McNeal-Taylor Co., in carrying out the agreement theretofore made by a creditors' committee of McNeal-Taylor Co., as to the manner in which money derived from the contract should be applied in payment of obligations incurred in connection therewith. On May 8, 1929, the Indemnity Company addressed to each and all appellants a written communication which is as follows:

"May 8, 1929.
"Warren Webster Co.,
"326 Columbia St.,
"Seattle.
"Re: McNeal Taylor Co., Northern Life Tower Construction.
"Gentlemen:
"The McNeal Taylor Co., and its creditors on the Northern Life job are desirous of reaching some early agreement with the New York Indemnity Company

concerning the payment of balances due on the Northern Life Tower.

"In order to facilitate an early agreement we are anxious to have accurate information concerning all claims. We therefore request that you immediately send us a statement showing the following information: (1) total claim, (2) amount of material, (3) amount of labor, (4) whether or not furnished under contract, if so, salient features of contract, (5) date commenced furnishing labor and/or materials, (6) date completed, (7) was a lien notice furnished to the Northern Life Tower—if so, send copy, (8) payments made; (9) any offsets against claim, (10) exact balance due.

"Please furnish detailed and accurate information as we wish to avoid controversies after checking with our present records from the McNeal Taylor Company.

"It is believed that all legitimate claims, regardless of lienability or perfection of liens, can be guaranteed and paid at a reasonably early date, if the co-operation of creditors is given.

"Send all communications to the undersigned at 1311 Alaska Building, Seattle.

> "Yours truly,
> "Caldwell & Lycette
> "By John P. Lycette,
> "Attorneys for New York Indemnity
> Company."

Certain payments were thereafter made pursuant to such agreement, under the direction and with the approval of the indemnity company as above stated.

A stipulated fact was that, if McNeal-Taylor Co. had gone into bankruptcy, or if all the moneys due from the Northern Life Tower to McNeal-Taylor Co. at the time mentioned (that is, the time of insolvency) had been applied to the valid lienable claims then existing against the Northern Life Tower and created by McNeal-Taylor Co. under its contract, then and in

that event each of appellants herein would have received a smaller sum than they were actually paid under the conditions and arrangements referred to in that finding. None of appellants or claimants herein nor their assignors at any time sent the Northern Life Insurance Company, the owner of the Northern Life Tower, any notice of the commencement or delivery of materials and intention to claim a lien. At all the times stated, McNeal-Taylor Co. was carrying on other similar construction jobs with which the indemnity company had no connection, direction or control.

Under the arrangement made by the creditors' committee, respondent turned over all money received under the several contracts of McNeal-Taylor Co. and they were applied as payments in connection with the obligations incurred therewith, by reason of which the creditors, including appellants, received about sixty per cent of their total claims.

None of appellants nor their assignors perfected any right to file a materialman's lien against the building that was being constructed for materials so furnished. In other words, they had lost their lien rights.

As stated by appellants, all claims of error raise the one question of whether appellants have a cause of action against respondent upon the bond furnished by it pursuant to the construction contract. As stated by respondent, the question is, Is there any privity of contract between appellants and respondent?

Appellants specially emphasize and rely upon the condition in the bond after the provision for reimbursement to the owner for all outlay and expense incurred by it, reading:

". . . and shall pay all persons who have contracts directly with the principal for labor or materials."

To sustain their contention, appellants rely chiefly

upon *McDonald v. Davey,* 22 Wash. 366, 60 Pac. 1116; *Puget Sound State Bank v. Gallucci,* 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767; *Du Pont de Nemours & Co. v. Columbia Casualty Co.,* 150 Wash. 362, 273 Pac. 181; and two outside cases, *Knight & Jillson Co. v. Castle,* 172 Ind. 97, 87 N. E. 976; and *Getchell & Martin Lumber & Mfg. Co. v. Peterson & Sampson,* 124 Iowa 599, 100 N. W. 550.

We consider the matter fully determined by our own cases. The *McDonald* case has been, in effect, over-ruled and disregarded since our decision in *Armour & Co. v. Western Construction Co.,* 36 Wash. 529, 78 Pac. 1106.

The condition relied upon in this bond is no more comprehensive than that in *Spokane Merchants Association v. Pacific Surety Co.,* 86 Wash. 489, 150 Pac. 1054. There the bond provided that the surety company:

" '. . . shall pay all laborers, mechanics, sub-contractors, and material men and all persons who shall supply such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on such work, and all just debts, dues and demands incurred in the performance of such work.' "

It was there held that there was no privity of contract between the surety company and the persons who furnished the subcontractor with supplies for the prosecution of his subcontract. *Sears v. Williams,* 9 Wash. 428, 37 Pac. 665, 38 Pac. 135, 39 Pac. 280, and the *Armour & Co.* case, *supra,* were approved as announcing the correct principle.

Again, in *Du Pont de Nemours Powder Co. v. National Surety Co.,* 90 Wash. 227, 155 Pac. 1050; *id.,* rehearing, 94 Wash. 461, 162 Pac. 866, it was distinctly held that, in the case of private bonds, the *Armour* case had disapproved the *McDonald* case, and it had

become the established law by it and later cases that a surety on a private bond is not liable to a material-man because there is no privity between them.

A distinct line of cleavage must be observed between cases involving private bonds and public or statutory bonds. As to public or statutory bonds, the rule differs. *Rust v. United States Fidelity & Guaranty Co.,* 87 Wash. 93, 151 Pac. 248; *Cloud v. Greenwood Logging Co.,* 157 Wash. 261, 288 Pac. 910.

As to private bonds, there must always be privity between the materialman and the surety. The bond in the instant case was one given to protect the owner, and there was no privity between the materialmen and the surety. In that case it is governed by our decisions in the *Sears, Armour & Co., Spokane Merchants Association, Rust,* and *Du Pont* cases, *supra.* See, also, *Horstmann Co. v. Waterman,* 103 Wash. 18, 173 Pac. 733, 1 A. L. R. 856; *Schoemer v. Zeran,* 126 Wash. 219, 217 Pac. 1009; *Bon Marche Realty Co. v. Southern Surety Co.,* 152 Wash. 604, 278 Pac. 679; and *National Surety Co. v. Swasey,* 154 Wash. 369, 282 Pac. 209.

Appellants rely strongly upon the *Du Pont de Nemours & Co.* case in 150 Wash. 362, 273 Pac. 181, cited by them. In that case, without citing a single one of our former decisions, it was said:

"We think there can be no question but that, under the holdings of this court, materials furnished by respondent were materials for which a lien might have been filed, and we think they were clearly a class of materials the payment for which was guaranteed by the bond given."

In the statement of the case it was said:

"The Weyerhaeuser Timber Company . . . desired to construct a few miles of railroad in Cowlitz county, . . . and . . . awarded a contract for the building of this road to Hanson & Eva Company, an Oregon corporation."

It seems to have been assumed in that opinion that the railroad in question was a public carrier railroad and governed by our decisions as to bonds for the protection of laborers and materialmen as to such companies, whereas the contrary was true.

The record in that case shows, and the briefs of both parties assert, that the railroad constructed was a private railroad line, and the work was not of a public character. This feature was unfortunately overlooked in the opinion in the case, and the decision seems to have been rested upon our cases relating to bonds to secure work of public character. However, the result reached in that case was correct for the reason that, as stated in the opinion:

"In addition thereto there can be no question but what the testimony clearly preponderates that, when the appellant took over the contract from the Hanson & Eva Company, it assumed and agreed to pay this account, and that there was ample consideration for the promise."

The portion of the opinion first quoted was not correct under the situation there shown, and should, henceforth, not be considered as authoritative.

We conclude that there was no privity between respondent and appellants, and that appellants had no right to recover under the provisions of the bond before us.

Nor do we consider that the respondent is estopped, as seems to be implied by appellants, by the letter hereinbefore quoted. We do not construe the letter as do appellants. The letter shows that counsel for respondent simply stepped into the situation as they found it for the purpose of assisting in carrying out the creditors' agreement for distributing the funds of McNeal-Taylor Co. ratably. The payments were to be made from the contractor's own money and known

to be so made, because that was the agreement of the creditors. That was done, and appellants, among the other creditors, benefited by the distribution. Nor do we consider that, by so undertaking to distribute the fund in accordance with the creditors' agreement with McNeal-Taylor Co., respondent did anything that could be considered as construing the bond as binding upon it to pay any obligations it did not pay.

For the reasons herein stated, the judgment of the court below is affirmed.

MITCHELL, C. J., TOLMAN, PARKER, and MAIN, JJ., concur.

