[No. 36957. Department One. May 7, 1964.]

JAMES M. MORRIS, *Appellant,* v. ROBERT L. ROSENBERG *et al.,*
*Respondents and Cross-appellants,* DONALD E.
HENDERSON *et al., Respondents.*\*

*John F. Robinson,* for appellant.

*Monheimer, Schermer, Van Fredenberg & Smith,* for respondents.

HALE, J.—This case, if nothing else, points up a moral: In gaining a business colleague, one may lose a friend.

From a judgment dismissing six separate causes of action, appellant narrows this appeal by explicit language in his brief to a review of that part of the judgment dismissing the second cause of action only. Appellant now seeks recovery of $23,500, a sum of money invested by him in purchasing stock in the Joseph Goder Pacific Incinerators, Inc., claiming unjust enrichment. He pleads the purchase of the stock under a promise of permanent employment and the breach of that promise by discharging him from his position without good cause, and that the termination of employment consti-

\*Reported in 391 P. (2d) 975.

tuted a failure of consideration, entitling him to a return of the money invested. He narrows his right to recovery to respondents Robert L. and Marie Rosenberg, personally.

Defendants Rosenberg denied the promise of personal permanent employment and affirmatively defended that the plaintiff was discharged from his employment for good and sufficient cause. They denied any failure of consideration and assert that appellant invested his money with full knowledge of the corporation's activities, structure, organization and prospects.

Goder, Inc., was adjudicated a bankrupt in February, 1961, and on March 6, 1961, a trustee in bankruptcy was appointed for it. A trustee has never been made a party to this proceeding.

If this appeal fails, appellant will be a stockholder in a bankrupt corporation occupying much the same status as do the other individual parties to this action. The case depends largely upon an understanding of the facts with issues of law playing a minor role in the solution. Since the facts, as disclosed by this record, are complicated and arise from conflicting evidence, we believe it appropriate to mention that counsel for appellant in this appeal neither made an appearance in nor participated in the trial.

James M. Morris met Robert and Marie Rosenberg when the three attended Stanford University. They became close friends, a friendship lasting almost until the commencement of this action. Morris and Rosenberg shared a house near the campus during college days and attended classes together; they attended first year of law school together, took fishing trips and saw each other while in the military service. Morris attended Robert and Marie Rosenberg's wedding. After graduation from law school, Morris became a state assistant attorney general in 1948, and while in the office suffered a nearly total hearing loss. He describes his continuing personal relationships with the defendants in this way:

"  .  . That was a period of about a year. When I returned to Seattle I was living alone and I spent a great deal of time with the Rosenbergs; evening meals and also the

Rosenbergs did a lot of work for me and a lot of help with lip-reading. They learned a new system from their doctor and bought a book and spent a great deal of time working with me. It was during this period that I found out that Mr. Rosenberg was able to modulate his voice so that I could understand him where I could not understand most people. About 1955 or 1956 I went into private practice and at the same time became personal attorney for the Rosenbergs and attorney for their corporation. After that we were together as occasion demanded on business purposes. We also continued our association on a social basis. We took vacations together, we visited back and forth at one another's home and so on. That continued to December, 1959."

The Rosenbergs had gone into the business of manufacturing and selling incinerators through the Joseph Goder Pacific Incinerators, Inc., and in 1955 engaged plaintiff as the corporation's attorney. At first, while the company was small, Mrs. Rosenberg managed it, but as it expanded Robert Rosenberg assumed direction of the operation. Mr. Morris, as attorney for the company, acquired detailed knowledge of its operation; on several occasions he suggested that he would like to enter the business.

In December, 1959, when the Rosenbergs and the Morrises were on a pleasure trip to Mexico, the two men stopped at Berkeley, California, to inspect the Albany Concrete Products plant as a possible acquisition for the Goder Company. At that time, they decided that Morris could enter the company by investing $25,000 in the stock and participate as an officer or manager of its affairs. Details of the complicated arrangement were oral, and, when described in court, conflicting. In addition to assuming the duties of office manager in Berkeley, plaintiff continued as counsel for the corporation.

From conflicting evidence, the trial court made a finding in substance that Morris and Rosenberg each agreed to invest sufficient money to bring their respective shares to $25,000, making a total ownership between them of 66⅔ per cent of the capital stock. Plaintiff would co-sign the existing corporate obligations of Joseph Goder Pacific Incinerators, Inc. to Seattle-First National Bank and the Small Business Administration theretofore personally guaranteed

by Rosenberg. Thereafter, the two men jointly and severally were to guarantee equally all future indebtedness.

The court found that plaintiff Morris was to move to Berkeley, be employed by the corporation, and to remain in such employment as long as his services were satisfactory. Plaintiff assumed the responsibility of learning the business and manufacturing procedures, and undertook to keep in effect in the Berkeley plant the same methods and procedures as had been tried and tested in the Seattle plant.

Joseph Goder Pacific Incinerators, Inc., acquired the plant in Berkeley, California. Plaintiff did buy $25,000 worth of Goder stock, paying in $23,500 thereon, with the balance to be paid later, and moved to Berkeley to commence his employment. His employment started April 1, 1960, as office manager of the Berkeley plant, at a salary of $700 per month; Robert L. Rosenberg continued as president and general manager of the company.

On June 11, 1960, Robert Rosenberg notified Morris that the latter's employment with the company was terminated, and the court sustained their termination as being for good cause. The court found from conflicting evidence that Morris had failed to learn the methods and procedures of the Seattle plant and to apply them at Berkeley; he had failed to carry out the legitimate instructions of the company president; and he had failed to carry out the important duties of an office manager as agreed to orally when he invested his money. In short, the trial court found from conflicting evidence that the discharge of plaintiff from his employment was for good and sufficient cause.

Plaintiff seeks now a return of his $23,500 investment. In his amended complaint, he charged that he was discharged from his employment "without fault on the part of plaintiff and without cause on the part of the defendants." Defendants answered this allegation by general denial and by affirmative defense that plaintiff had failed to perform his duties in a reasonably prudent manner, all to the injury of the corporation and that the termination of employment was for good cause.

In summing up the evidence and its legal effect, the court noted that plaintiff had the burden of proving that his discharge from employment was without fault on plaintiff's part; that the evidence was in conflict on this point; and that plaintiff failed to convince the court by a preponderance of the evidence that he was discharged without cause.

The case turns on this point—and considering that all of the arrangements between the parties were part of an oral agreement, the numerous parts of which taken together make up the whole thereof—we must hold that, if the termination of plaintiff's employment was for good cause, plaintiff suffered no damages cognizable at law. His rights in the premises would then be deemed identical with those of the other stockholders in an insolvent corporation, among whom were the individual defendants.

■ First, as to the burden of proof, we affirm our statement in *Hansen v. Columbia Breweries, Inc.*, 12 Wn. (2d) 554, 122 P. (2d) 489, that:

"There is no legal presumption that a servant has failed to perform his duty in compliance with his contract from the fact that he has been discharged. When the employee sues for damages, as for a wrongful discharge, the burden is upon the employer to prove incompetence, negligence, or misconduct as a justification."

, But, we should point out that this principle was held applicable to a contract of employment for a fixed term—one year—and a different rule governs if the term be indefinite, for earlier in the case we said: "Although it is the rule that the employment of a person for an indefinite term may be ended at any time by either of the contractual parties, yet it has no application here.", because a jury was justified in finding the contract to be for a definite, one-year term. Plaintiff's employment, in the instant case, was for an indefinite term.

Secondly, we think it pertinent on this question of proof that the plaintiff not only pleaded in his amended complaint his discharge from employment without cause but assumed the burden in his case in chief by supplying extensive evi-

dence of his competent management of the office and handling of the company affairs in Berkeley.

We need not go into the burden of proof further, for the court's reference to its being placed upon the plaintiff seems to us to be chiefly *obiter,* or commentary. After commenting to that effect in his oral memorandum of opinion, the court made the following finding of fact, *inter alia*:

"On the issue of the sufficiency of plaintiff's performance of his duties, and whether justification existed for plaintiff's discharge, the Court finds that the evidence is conflicting and the witnesses were equally credible on both sides; that all parties acted with the best of motives throughout; that plaintiff has not sustained the burden of proving that he was discharged without cause. That during the period from April 4, 1960, to June 11, 1960, each of the individual defendants carried out his duties and responsibilities conscientiously for the good of the corporation and of its stockholders. That, during this same period of time, plaintiff failed to take sufficient time to learn the business and to familiarize himself with the Seattle procedures; that plaintiff failed to put the Seattle practices and procedures into use and operation in the Berkeley plant; that plaintiff failed to discharge his agreed corporate duties in accordance with the instructions and directions of Robert L. Rosenberg, President and General Manager of defendant corporation, and failed to discharge important duties and responsibilities that he had agreed to discharge under his oral contract . . ."

The court's declaration included in the above finding *that plaintiff has not sustained the burden of proving that he was discharged without cause,* is not a finding of an ultimate fact, but constitutes simply a commentary of the court in weighing the evidence and must be regarded as mere surplusage. Aside from this commentary on the burden of proof, the trial court does, in this finding, adopt as ultimate facts in the case that plaintiff failed to fulfill the requirements of his position and comply with the terms of his oral employment contract. These findings give adequate support to the court's conclusion that plaintiff was discharged from his employment for good and sufficient cause. Accordingly, any further discussion of the burden of proof, in the light

of the court's specific findings of fact derived from a record showing substantial though conflicting evidence, becomes superfluous.

■ Appellant levels 11 assignments of error at the several findings of fact, and others at the conclusions of law based thereon. Our study of the evidence shows all of the findings of fact to be based on and supported by abundant, albeit conflicting, evidence. We will not review issues of fact where the findings are sustained by substantial evidence. *Dodd v. Polack,* 63 Wn. (2d) 828, 389 P. (2d) 289; *Dominy v. Cecil,* 63 Wn. (2d) 760, 388, P. (2d) 917.

Respondents Rosenberg cross-appeal and assign as error that part of the findings of fact and conclusions of law in which the trial court relieved Morris of liability on guarantees made by Robert Rosenberg to the Seattle-First National Bank, the Small Business Administration, and the Flintkote Company. We find this assignment of error to be without merit.

We decide, therefore, that the conclusions of law are supported by the findings of fact and both support the judgment which we hereby affirm as to the appeal and the cross-appeal.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.