[No. 37232.    Department One.    July 23, 1964.]

BOISE CASCADE CORPORATION, *Respondent,* v. LAWRENCE C. PENCE *et al., Appellants.*\*

\*Reported in 394 P. (2d) 359.

*Orndorff & Pence* (*James L. Pence*, of counsel), for appellants.

*John D. MacGillivray* and *Harvey W. Clarke*, for respondent.

HALE, J.—Dr. Lawrence C. Pence engaged Tom Myklebust, a building contractor, to build a new house for him in Spokane. They signed a formal contract in November, 1960, in which Myklebust agreed, for the sum of $28,267.80, to complete the house, supplying all materials and labor, in accordance with the plans and specifications prepared by Dr. Pence's architect. The building contract provided that Dr. Pence deposit the $28,267.80 in periodic payments with the Land Title Company of Spokane as escrow agent, and the Land Title Company, in turn, make "all payments to the sub-contractors and all payments to materialmen" directly upon presentment of proper invoices or vouchers, and in accordance with certain progress reports to be made by the owner's agent. The escrow arrangement seemed a good method by which the owner might prevent mechanic's and materialman's liens from accruing and at the same time assure the subcontractor and materialmen of payment.

Plaintiff Boise Cascade Corporation owns and operates a building supply and equipment facility called Bestway Building Center. Through Bestway, plaintiff sells building materials and engages in construction work. Builder Myklebust, before starting work on Dr. Pence's house, discussed with Bestway his purchase of materials and the possibility that Bestway might undertake the plumbing subcontract. Bestway, having some reservations about Myklebust's credit, but learning of the escrow provisions in the Pence-Myklebust building contract, asked Land Title Company about it. Land Title Company informed Bestway that Dr. Pence would, under the provisions of the contract, deposit sufficient moneys with it as escrow holder to cover the price of materials and pay the subcontractors.

Beginning about November 15, 1960, Bestway commenced delivery of lumber and other building materials to the construction site on Myklebust's order, sending to Dr. Pence, the owner, a 10-day statutory notice of delivery. A few weeks later, December 6, 1960, Bestway, through its agent, plumber Lyle Harty, contracted to install the plumbing, supplying labor and materials, for $1,356.

Things went along without incident until the residence neared completion, when, about February 1, 1961, differences developed between Dr. Pence and Mr. Myklebust and they ended their contract with Myklebust leaving the job. Shortly thereafter, Dr. Pence engaged another contractor, Mr. Bogart, to complete the house—but omitted any reference to the plumbing in this arrangement.

After Myklebust's departure from the site, Dr. Pence visited the place several times and observed Bestway's plumber, Mr. Harty, working in the house, but did or said nothing to end the plumbing contract, thus permitting the work to go forward until Harty had completed it. He also had Mr. Harty do some extra plumbing, for which he paid him $117 directly.

Dr. Pence readily acknowledges responsibility for all materials delivered and plumbing installed before, but not after, Myklebust left the job, insisting that the latter were Myklebust's obligation. He says that he paid Myklebust for these things in accordance with the building contract and escrow provisions. Bestway, as plaintiff, claiming to be a third-party beneficiary under this contract, brings this action for materials sold and plumbing installed and to foreclose its lien, filed May 31, 1961, on the Pence residence. Its notice of lien claim, without mention of either labor or plumbing, includes these items in the total monetary demand for materials.

The trial court found that Bestway performed three separate contracts: (1) Delivery of building materials under open account at the order of Myklebust *before* he left the job on February 1, 1961; (2) delivery of building materials on open account *after* February 1, 1961, all of which have been paid for by the defendants; and (3) the entire plumb-

ing contract—except extras—performance of which began prior to and continued after Myklebust's departure. On the open account deliveries made before February 1, 1961, the trial court allowed judgment for $2,366, but denied the lien for want of timely filing; it allowed the plumbing claim as a mechanic's lien in the further sum of $1,478.20, and awarded an attorney's fee of $147.80 for foreclosure of the lien.

■ From this judgment Dr. Pence appeals, directing numerous assignments of error to the findings of fact. Our review of the record and examination of the exhibits show each finding of fact to be supported by substantial evidence, and, therefore, the findings will not be disturbed on review. *Morris v. Rosenberg, ante* p. 404, 391 P. (2d) 975; *Dodd v. Polack,* 63 Wn. (2d) 828, 389 P. (2d) 289; *Dominy v. Cecil,* 63 Wn. (2d) 760, 388 P. (2d) 917.

The remaining assignments of error merge to present two questions: (1) Did the building contract, in establishing the Land Title Company as escrow holder, create a third-party contract for the benefit of materialmen and subcontractors? and (2) Did the lien claim meet the requirements of RCW 60.04.060 as to form and contents?

■ We agree with the trial court's finding that the plumbing contract, entered into with Myklebust December 6, 1960, several weeks after Bestway had started delivering building materials on open account, is a separate, distinct and severable contract. It could not properly be tacked on to the claim for materials so as to make the filing of the lien timely by adding it to the claim for deliveries made on open account. *Anderson v. Taylor,* 55 Wn. (2d) 215, 347 P. (2d) 536, 78 A.L.R. (2d) 1161. The trial court properly denied the lien for the open account deliveries. We will next consider, then, whether the judgment was properly awarded on open account without allowance of a lien.

Appellants challenge the judgment awarded on open account contending that this is Myklebust's debt. They say that Bestway does not come within the definition of a third-party beneficiary to their escrow arrangements with Land

Title Company; that Bestway, not being a promisee under the contract, acquired no enforceable rights through it; that even a most favorable definition to Bestway gives it no better status than that of a mere incidental beneficiary.

The construction contract, between Dr. Pence as owner and Myklebust as builder, setting up the escrow arrangement through Land Title Company for the payment of materialmen and subcontractors, conferred contractual benefits on four parties: the owner, the contractor, the escrow agent and any other party whose performance would bring him within the classification of materialman or subcontractor. Although on the date of signing the identities of the fourth group were unknown, the other three parties knew that they would become known in the performance of the contract through the delivery to and use of materials in building the house. The materialmen and subcontractors, while not identifiable as beneficiaries at the time of execution of the contract, became beneficiaries of the owner's promises on performing in the manner contemplated by the contract with enforceable rights in the promises. Restatement, Contracts § 139, and 2 Williston on Contracts (3d ed.) § 378, say so in identical language:

"It is not essential to the creation of a right in a donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made."

4 Corbin on Contracts § 781, agrees:

"Of course the beneficiary must be identified before he has an enforceable right; but it is not necessary that he should be identified or identifiable at the time the contract is made. It is enough that he be identified at the time performance is due. . . ."

We adopted this view in *Finkelberg v. Continental Cas. Co.*, 126 Wash. 543, 219 Pac. 12, saying:

"A third person beneficially interested in a contract may maintain an action to recover thereon even though the identity of the third person may not be known at the time of the execution of the contract."

■ Thus we conclude that identity of the third-party beneficiary need not be known to promissor and promisee

at the time the promise is made as a precondition to enforcing the promise if the third-party beneficiary can be identified when the promise is to be performed.

Appellants additionally urge that at best Bestway is a mere incidental beneficiary acquiring no enforceable rights in the promises and refer us to a number of cases involving building contractor's indemnity bonds.

*Spokane Merchants Ass'n v. Pacific Surety Co.,* 86 Wash. 489, 150 Pac. 1054; *Armour & Co. v. Western Constr. Co.,* 36 Wash. 529, 78 Pac. 1106; and *Forsyth v. New York Indem. Co.,* 159 Wash. 318, 293 Pac. 284, and similar cases make it clear that the rules of law evolved to govern private indemnity bonds have little or no application to the instant case, for in such cases the contract or bond is for the benefit and protection of the owner, and the materialmen and workmen are only incidental beneficiaries. The promise usually found in private indemnity bonds put up by building contractors is direct as to the owner for whose benefit it is made, but merely general as to the materialmen and subcontractors. The latter may or may not benefit—and then only indirectly—when the owner is reimbursed. Materialmen and subcontractors in a private—as distinguished from a public—construction thus usually have the status of incidental beneficiaries of the contractor's promises to indemnify the owner, and generally acquire no enforceable rights from so general a promise. *Pacific Mercantile Agency v. First Nat. Bank of Ferndale,* 187 Wash. 149, 60 P. (2d) 6. This conforms to the well-established rule that, whereas donee and creditor beneficiaries may enforce promises made to others, incidental beneficiaries cannot. Restatement, Contracts §§ 133 to 147.

But in the instant case, unlike the situations obtaining in the private construction indemnity bond cases, we have promises made directly to both the builder and the escrow holder for the direct benefit of any person performing a subcontract or delivering materials to the owner's building. Dr. Pence's promise thus was not contingent merely to pay the materialmen's and subcontractors' bills if Myklebust failed to do so, but, on the contrary, was a direct

promise to pay to such materialmen and subcontractors as would establish their identity by proof of delivery or performance.

The materialmen and subcontractors thus became creditor beneficiaries of Dr. Pence's promise to Myklebust and Land Title Company to deposit the money with which to pay for the materials delivered and subcontracts performed. Restatement, Contracts § 133 1(b); *Cascade Tbr. Co. v. Northern Pac. R. Co.*, 28 Wn. (2d) 684, 184 P. (2d) 90; *Grand Lodge of the Scandinavian Fraternity of America, Dist. No. 7 v. United States Fidelity & Guar. Co.*, 2 Wn. (2d) 561, 98 P. (2d) 971. *Cf., Pacific Mercantile Agency v. First Nat. Bank of Ferndale*, 187 Wash. 149, 60 P. (2d) 6.

We next turn our attention to the assignments of error challenging the legal sufficiency of the lien claim on which the court allowed foreclosure for the plumbing contract. The instrument filed is denominated "Materialman's Notice and Claim of Lien." It states that Bestway Building Center on October 24, 1960, at the request of Tom Myklebust began to "sell, furnish and deliver materials" to him and continued to do so until April 15, 1961, to be used in the frame dwelling upon legally described land owned by Dr. Lawrence Pence. The lien claim declares the total value of such delivered materials to be $7,274.87, acknowledges payment thereon of $3,233.50 and asserts an unpaid balance accordingly of $4,041.37. The instrument contains no mention of labor performed nor does it identify any of the materials as being plumbing materials or fixtures. It lumps together all building materials delivered by Bestway to the Pence residence, commencing with the first deliveries in October, 1960, and the labor and materials supplied in performance of the plumbing contract of December 6, 1960, without in any way mentioning that the plumbing contract had been included in and made a part of the lien claim, or asserting that any part thereof was for labor.

We have known since *Spears v. Lawrence,* 10 Wash. 368, 38 Pac. 1049, 45 Am. St. Rep. 789 (1894), that, where the agreement is entire, to do all labor and furnish all materials necessary to complete a construction contract—as in a paint-

ing agreement—a lien notice which identifies the contract by setting it out need not separate nor segregate the labor and materials. We said:

" . . . There was no separate contract for the labor and for the materials, but one gross contract for everything required in the prosecution of that particular work, and this being so there could not well be set out a claim under said contract for separate amounts for materials and for labor."

This appears to be a sound statement of the law and we adhere to it, but we would not extend the ruling to include the type of lien claim filed in the instant case. In *Spears,* the lien notice apparently set out the special contract under which the materials were to be furnished and the work performed, whereas here we have no such singularly identifying provision.

■ A reading of RCW 60.04.060, prescribing as it does the form, style and content of the lien claim, will, we think, show Bestway's notice of lien claim to be legally insufficient and, therefore, fatally defective as to the plumbing contract. Says the statute:

" . . . Such claim shall state, as nearly as may be, the time of the commencement and cessation of performing the labor, furnishing the material, . . . the name of the person who performed the labor, furnished the material, . . . the name of the person by whom the laborer was employed . . . or to whom the material was furnished, . . ."

Bestway claims it started delivery of building materials to Myklebust about October 24, 1960; its plumbing contract with Myklebust through its agent Harty, the plumber who did the plumbing work, was not signed until December 6, 1960, and the record is silent as to when Mr. Harty actually started work on this particular job. The two agreements, one to deliver building materials on open account and the other to furnish labor and plumbing materials and fixtures under a written contract, were thus separate and distinct agreements, and the claim of lien filed should have so recognized them.

The lien claim being insufficient in form and content to meet the requirements of RCW 60.04.060 as to the plumbing contract, it was error to allow it as a lien, although right to grant judgment for the debt established thereby. Accordingly, the plumbing lien will be vacated, and the attorney's fee and costs for its foreclosure will be denied. In all other respects, the judgment is affirmed with the amount allowed for plumbing to be included therein, respondents to have costs on appeal.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.