[No. 30848.   Department One.   March 3, 1950.]

CHARLES H. DAVIS, *Respondent and Cross-appellant,* v.
JOSEPH J. ALTOSE *et al., Appellants.*[1]

[1]Reported in 215 P. (2d) 705.

*Sather, Livesey & Kingsbury,* for appellants.

*Walter F. Fisher* and *T. B. Asmundson,* for respondent and cross-appellant.

DONWORTH, J.—This is a mechanics' and materialmen's lien foreclosure action brought by a building contractor to recover the balance claimed to be due for the construction

of a residence in Bellingham built pursuant to a written contract.

On March 14, 1946, plaintiff and defendant Joseph J. Altose (who is the father of defendant Kenneth Altose) entered into a written contract (prepared by defendants' attorney, R. W. Greene), wherein plaintiff agreed to construct a dwelling and garage in accordance with a certain floor plan and specifications. While the contract was executed by defendant Joseph J. Altose, the dwelling was to be occupied by his son, defendant Kenneth Altose, and both of them participated in giving directions to the contractor during its construction.

Under the terms of the contract, defendant Joseph J. Altose (sometimes referred to as the owner) agreed to pay to the plaintiff (sometimes referred to as the contractor) the sum of $8,089.80 for the construction of the dwelling. The contract provided that the work should be started immediately upon the execution of the contract and should be substantially completed not later than June 1, 1946. It further provided that all materials should be new and both workmanship and materials should be of good and first-class quality and all workmen and subcontractors should be skilled in their trades.

The contract contained the following provision:

"In the event that any change be made in any of the work, the same shall only be made upon written orders and the cost must be agreed upon in writing before executing the work involved."

Pursuant to this provision, two changes were made in writing, one being dated April 2, 1946, with reference to additional work on the garage at an increased cost of $176, and the other dated July 6, 1946, providing for additional work upon the side porch at an increased cost of $147.50.

During the time that the house was being constructed, building materials were difficult to obtain, and even though a priority permitting the use of certain materials had been issued by the W.P.B. because the house was to be occupied by a veteran, plaintiff encountered difficulty in locating

suppliers who had them. He also testified that he was unable to obtain competent masons and that certain masonry work was performed by carpenters.

The house was not completed on June 1, 1946, and the construction proceeded (with some temporary stoppages) during the following summer and fall. Finally, on January 29, 1947, R. W. Greene, attorney for the owner, wrote the plaintiff as follows:

"Mr. Altose has requested me to notify you that unless you had the Victor Street house all finished by February 5 that he would take over and complete the work and that you were not to interfere with any work that he might be doing after February 5 but were to thereafter keep away from the premises."

Plaintiff, being of the opinion that it was impossible to complete the work by February 5, 1947, ceased the construction of the house, and did nothing further pursuant to the contract.

On that date, plaintiff filed a claim of lien against the real property on which the house was located, in which he asserted that the value of the materials furnished and labor performed was $12,745, on account of which he had been paid $5,250, leaving a balance of $7,495 owing to him.

Shortly thereafter, plaintiff commenced this action for the foreclosure of his lien, asking for judgment in the amount of $4,746.71 and his attorney's fees in the sum of $600 if the suit should be contested. In addition, plaintiff claimed compensation for "extras" on account of changes and alterations ordered by the defendants during the construction of the house, the cost of which, including overhead and profit, amounted to $2,010.49. He also sought to recover the sum of $299.90, which was alleged to be the amount of sales tax that the plaintiff was required to pay to the state of Washington.

Defendants answered admitting the execution of the contract and the payment of $5,250 to the plaintiff thereunder and denied that there was any balance owing to the plaintiff. It was affirmatively alleged that the defendants had

paid out for the construction of the house a total sum of $9,348.05, which exceeded the contract price by $934.75, for which defendants were entitled to be reimbursed by the plaintiff. It was also affirmatively alleged that the plaintiff had failed to construct the house with new materials of first-class quality and with workmen skilled in their trades, as required by the contract, and set forth the seven particulars in which the house failed to comply with the terms of the contract, specifying the amounts which defendants would be required to expend because of plaintiff's failure to properly perform his contract. The defendants asked for judgment against the plaintiff in the sum of $1,603.75.

Plaintiff's reply put in issue the material allegations of the affirmative matter contained in the answer and alleged that

" . . . many changes were made in the plans, specifications and materials to be used in the construction of the buildings by mutual agreement of the Parties and/or acquiescence thereof from the very inception of the work and until the completion thereof, resulting in much additional work and/or materials from that required or necessary as per said contract and specifications entered into, with the agreement and understanding that the Defendants would pay the Plaintiff for such additions, alterations or changes resulting in added work and/or materials, plus a reasonable profit thereon, and that likewise the Defendants would be credited for changes or alterations which would result in less labor and/or materials than required or necessary by the terms and conditions of the original contract and specifications."

Pursuant to a demand of the defendants, plaintiff filed a bill of particulars setting forth fifty-two separate items of changes or extras caused by the acts of the defendants, having a total value of $2,598.91.

The trial of the suit lasted four days, and at the conclusion thereof the court rendered an oral decision covering twenty pages of the statement of facts in which the court reviewed the conflicting testimony with respect to each of the fifty-two items set forth in plaintiff's bill of particulars. Regarding the principal issue in the case, the trial court summed up the situation as follows:

"On the issue of the main case, we find a rather difficult situation as far as both of these parties are concerned. They started out to build this house, and had a contract prepared. The contract called for certain, definite things and modified that in specifications, and in certain parts of the contract we find rather ambiguous and incomplete descriptions of what should be done, but, in considering the case, I have considered that they did start with this contract, and that variations from its terms have to be considered pretty much as extras. The contract was prepared by Mr. Greene on behalf of the defendants. They kept Mr. Greene familiar with the progress of the work. He was handling disbursements and other matters for them. It seems that, in the construction of the contract, the defendants are to be considered as the ones who prepared the contract and submitted it, and should have included those things which it is, some time later, said that the contract intended. Another thing which I have thought in connection with this matter is that Mr. Davis, as the contractor, assumed certain responsibilities for completion, and that certain losses, such as delays because of weather and material and general conditions prevailing at the time, difficulty in obtaining material, the increase in price in the labor market and in the material market, were things which he, as a contractor, was obliged to take into consideration and, if they are to his detriment, he has to bear the loss, just the same as if he would benefit from a falling market in which case he would have made more money on the job.

"Just in passing, I think we can certainly see that was not the time to build a house, either from the owner's or the contractor's standpoint. They couldn't get what they wanted, and when they did get it, it was inferior in quality and workmanship.

"I have gone over the items in plaintiff's bill of particulars, and also in defendants' list of payments, and we can consider them individually, if you like, or I can give you the result of the computation which I made, based upon a computation of each individual item. Now, I realize that, with regard to each item, there is a dispute in the facts. I have tried to consider them with the two thoughts which I previously mentioned in mind, and have tried to conclude where I thought the evidence indicated the expense of each item should fall."

Thereafter, the court entered findings of fact in which the various credits allowed to the contractor and the owner

were set forth in detail. Based upon these findings, the court entered a judgment and decree of foreclosure in favor of the plaintiff in the amount of $1,273.40 plus interest and for the further sum of $400 attorney's fee. It was further provided that, in the event of an appeal to this court, an additional attorney's fee of $400 should be allowed.

The defendants then moved that the judgment be vacated and a new trial granted or, in the alternative, that the judgment be modified and reduced in the amount of $234.57, on the ground that it was entered through inadvertence, surprise, and excusable neglect, and further that it was procured by fraud practiced by the plaintiff in obtaining the judgment. Affidavits were filed both in support of and in opposition to this motion.

Defendants served and filed their notice of appeal to this court and deposited two hundred dollars cash with the clerk of the superior court in lieu of a cost bond on appeal. Consequently, when defendants' motion came on for hearing, the trial court held that it had no jurisdiction to entertain the motion because an appeal had been perfected to this court.

Thereafter, upon stipulation between the parties, this court entered an order remanding the case to the superior court with directions to hear and determine this motion. The order provided that

". . . all parties hereto shall have the right to appeal to this Court from whatever order or judgment is entered by said Superior Court upon such hearing and determination, such appeal if any there be, to be consolidated with, and become a part of the pending appeal herein."

Thereafter, the superior court, in passing upon defendants' motion above mentioned, took further testimony and entered an order modifying the judgment previously entered in favor of the plaintiff by reducing the amount thereof from $1,273.40 to $1,038.77 and denying the defendants' motion and petition in all other respects.

The defendants thereupon gave oral notice of appeal in open court, and the plaintiff, a few days later, served and filed his notice of cross-appeal.

Appellants (defendants in the trial court) in their brief have listed eighteen assignments of error, most of which relate to the failure of the trial court to allow various items for which they claim credit as having been necessarily expended by them to complete the work which the respondent failed to perform under the contract.

■ It would serve no useful purpose to review in detail all the evidence with respect to each of the items to which appellants take exception. Where, as here, the evidence in an equitable proceeding is conflicting, the findings of the trial court will not usually be disturbed. *Columbia Lbr. Co. v. Bush,* 13 Wn. (2d) 657, 126 P. (2d) 584. The findings of fact made by the trial court regarding these matters being fully supported by the evidence, we deem it necessary to discuss only the assignments of error mentioned below.

■ With respect to the provision in the contract to the effect that any change in the work should be made only upon written orders and the cost thereof agreed upon in writing before the execution of the work, the trial court correctly held that the parties had subsequently modified this provision by their conduct. *Eggers v. Luster,* 32 Wn. (2d) 86, 200 P. (2d) 520.

■ Appellants complain of the refusal of the trial court to give them credit for the cost of doing stucco work to complete the house. In holding that this item was an extra for which the owner was responsible, the trial court said:

"That brings us to the matter of stucco. That stucco is a peculiar matter. It seems to me that the evidence indicates that the house was intended to be built of tile, with struck joints, I suppose, but the outside appearance would be tile with the joints showing. The change in heating made it necessary to change the size of the tile from six by six by twelve to four by four by twelve which, of course, changed the outside appearance of the house, regardless of whether the small tile were of the same color. The outside of the house would have looked different. The contract didn't mention stucco, and it seems to me that the stucco became, under these circumstances, an extra which is the responsibility of the owner, being primarily caused by the change in the heating plant, less a credit, for not pointing it, of

$40.00. If no allowance is made to the defendant, and that is what I think the evidence indicates, for the stucco, an allowance of $40.00 must be made for not pointing or striking joints."

The holding of the trial court in regard to this item was entirely correct and no error can be predicated thereon.

■ Error is also assigned in the court's finding that the bill for electrical work was $244.30 instead of $344.30, which was the figure used by the trial court in its memorandum decision. Before the findings and judgment were signed by the court, the computation of the amounts was reviewed with counsel for the parties and they were requested by the court to verify the accuracy of the figures. At that time the following occurred:

"THE COURT: What items are you adding to get the judgment computation? MR. FISHER: I am taking $944.47 and the contract, and I am deducting from that payments— THE COURT: I got $7760.81 according to my computation: $1512.44, $5266.43, $832.00, and $150.00; that totals $7760.81. Deducting that from $9034.27 leaves $1273.40. MR. FISHER: That is correct, according to my figures. MR. KINGSBURY: That checks with mine. The cost of filing the lien was Eighty Cents, wasn't it? MR. FISHER: I think probably that is about right. THE COURT: I would suggest that you gentlemen check this. The figures have been supplied."

Obviously, the failure to use the correct figure ($344.30) in the findings of fact was merely a typographical error to which the attention of the trial court should have been called by appellants at the time the findings were signed. The court specifically requested counsel to check the figures used. While this change necessarily results in a reduction of the total amount awarded respondent, an appeal to this court was not necessary in order to correct it.

■ Appellants assign as error the failure of the court to give effect to certain provisions of the contract relating to the furnishing of receipts by the contractor. It is provided in the contract that the final payment shall not be due until the contractor has delivered to the owner's agent "receipts in full for all labor and materials for which a lien could be filed." In support of this assignment appel-

lants cite *Colby v. Interlaken Land Co.*, 88 Wash. 196, 152 Pac. 994, and other decisions of this court holding that, where a construction contract requires the production by the contractor of an architect's certificate of completion, this is a condition precedent to recovery of the final payment.

In the present case, the purpose of requiring production of receipts was solely for the purpose of assuring the owner that he would not be compelled to pay money to laborers or materialmen who might claim liens against the property after having paid the contractor in full. When this action was instituted, the time for filing lien claims against the property on account of obligations incurred by the contractor had expired. The law does not require the performance of a useless act where the owner has already received the protection which the contract afforded him.

The trial court allowed as a credit a portion of the bill of Blythe Plumbing & Heating Co., which totaled $535.36, and deducted therefrom the cost of roughing in the heating system. Appellants contend they were entitled to have the total amount deducted from the amount allowed respondent. In the court's oral decision, when these various items were being discussed and comments were being made by counsel for the parties, no objection was made by appellants' counsel upon the court's saying that the amount allowed appellants as a credit would be $256.99. In the findings of fact, this item was allowed only in the amount of $196.70. Since the proposed findings of fact were discussed item by item by the trial court in the presence of counsel for the parties, we think that this discrepancy between the two figures last mentioned should have been brought to the attention of the court at that time, and that it is now too late for appellants to complain of it.

In its oral opinion, the court stated, with respect to the bill of Luke & Crews for sanding the kitchen floor preparatory to laying the linoleum, that the respondent was responsible for supplying the linoleum and that "the balance of those items should be charged to the defendant." No objection to this statement was made by appellants'

counsel and it is likewise too late for appellants to complain of it.

Further complaint is made by appellants that no allowance was made for the construction of a back porch costing $130, which it is claimed was covered by the contract but not constructed by respondent. We are unable to find any reference to this item in the court's oral decision, and since there is nothing in the record indicating that appellants brought this item to the attention of the trial court, no error can be claimed on this account.

At the conclusion of the presentation of evidence on February 27, 1948, the superior court suggested that the parties might agree upon some competent person to repair the leaks which had developed in the house and make certain other repairs. Between that date and July 19, 1948, counsel for the parties attempted to agree upon and obtain the services of such a person, but for various reasons the matter could not be handled in this manner. The trial court finally abandoned this suggestion and allowed $150 to appellants to make these repairs. Appellants claim that they should have been allowed $846.61 for this purpose.

The trial court, having heard the testimony of several witnesses as to these defects in the house, was in a better position than we are to determine these questions of fact, and its disposition of these items will not be disturbed.

Error is predicated upon the allowance by the trial court of the sum of four hundred dollars as attorney's fee for services rendered in the trial court and also upon the allowance of the same amount for services in this court.

The question of attorney's fees was first raised by respondent's counsel when the court was rendering its oral decision on March 1, 1948, when the following occurred:

"MR. FISHER: How about allowance for attorney's fees? MR. KINGSBURY: We will have to see what the balance is. THE COURT: They have to be allowed. We had a three and one-half day trial. I don't think either party could be said to have delayed it. It is really practically four days, and I would think that we would have to make an allowance of attorneys' fees, and that allowance will have to be quite

substantial. It would make some difference, of course, if you have to pursue your full remedies of lien foreclosure, which I don't suppose you will, so if you don't reach any conclusion about it, I can assess that, or I can assess them now, assuming you don't have to foreclose. MR. KINGSBURY: Let's see what the balance is. THE COURT: Yes, if you want to, or I will put it in the judgment when you submit it. I feel it is substantial."

The matter was again discussed by the court and counsel on July 19, 1948, when the following took place:

"MR. FISHER: Well, we haven't agreed on attorneys' fees here. MR. KINGSBURY: No. *The Court can fix that.* MR. FISHER: I think he agreed that our request was reasonable. MR. KINGSBURY: I think you think wrong. THE COURT: Well, you prayed for $600.00. MR. FISHER: I think that is reasonable. THE COURT: Of course, I will agree, Mr. Fisher, that you probably earned $600.00. MR. KINGSBURY: *I am willing to leave that this way*: that, when these figures are completed, *Your Honor can add to it whatever figure you deem should be for attorneys' fees.* THE COURT: Well, both attorneys are going to take a loss on this, I think. I had in mind, but am not going to write it in here, because you can turn it over in your minds, $400.00. MR. FISHER: That is only court work. THE COURT: That is for foreclosing the lien. MR. FISHER: Well, that is not for outside work at all. THE COURT: Well, now, I think you have probably earned more money, but we have a judgment here for a thousand dollars, plus. I don't think we should sit here and draw a check on the defendant for inconsistent amounts." (Italics ours.)

When the findings and judgment were submitted to the court on July 26, 1948, and counsel for the parties were suggesting certain changes in the items, the matter of attorney's fees was again brought to the attention of the court by respondent's counsel in the following manner:

"MR. FISHER: Attorney's fee, $400.00? THE COURT: Did you discuss that further? MR. KINGSBURY: No. There has been no discussion of it. THE COURT: Well, we can allow it. The next blank? MR. FISHER: In the Supreme Court, if this goes up, an equal amount, I would say. MR. KINGSBURY: Can that be fixed at this time? THE COURT: It has to be, as I understand it. MR. KINGSBURY: *It doesn't seem to me it should be in that amount.* THE COURT: Well, you

will have the preparation of what, — four days trial. Mr. Fisher: With briefs and all, I don't think we can do it for less than that." (Italics ours.)

█ It thus appears that the matter of the allowance of attorney's fees to respondent was considered by the court and counsel at least three different times, the indication being that four hundred dollars would be allowed for services in each court. The statements made by appellants' counsel on each of these occasions can hardly be regarded as objections to the allowances proposed to be made. The amount to be allowed for services in the superior court was not contested by appellants, but fixing of the amount was left to the trial judge without recommendation on their part. The allowance for services in this court was barely objected to, no different sum being suggested. No request was made by appellants for an opportunity to present any expert testimony as to either allowance.

However, even though appellants are not now in a position to complain of these allowances, we feel it is the duty of this court on a trial *de novo* to review these allowances on its own motion. The statute under which this proceeding was instituted provides:

" . . . The court may allow, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the superior and supreme courts." Rem. Rev. Stat., § 1141 [P.P.C. § 180-25].

It is of the utmost importance to litigants that a reasonable attorney's fee be fixed by the court which will, as nearly as can be done, adequately compensate the lien claimant's counsel for services necessarily rendered in the case and at the same time not unduly burden the property owner with a payment which he must make, in addition to the amount of the lien, in order to discharge his property from the judgment. This presents a difficult problem where, as in this case, the legal services were necessarily more extensive than the amount recovered by the lien claimant would indicate.

In the case at bar, respondent's counsel were required to prove, or attempt to prove, the fifty-two items set forth in

the bill of particulars totaling $2,598.91. All of these items were strenuously resisted by the property owner, who not only denied in his answer that he owed respondent anything, but asserted that he should recover $1,603.75 from respondent based upon uncompleted and defective work in the house caused by respondent's failure to properly perform his contract. The trial of these issues consumed four days' time. In addition thereto, counsel for the parties were before the court on four subsequent occasions, the last one being the hearing upon appellants' motion for vacation or modification of the judgment, at which time further oral testimony was heard. There is no doubt, as stated by the court, that these legal services were substantial.

While we are reluctant to interfere with the allowance made by the trial court, especially where the amounts were practically agreed upon when the matter was discussed by court and counsel, nevertheless we feel constrained to reduce the total attorney's fees from $800 to $650, in view of the fact that the total amount which respondent will recover on his lien claim (after making the typographical correction above noted) is $938.77. The total allowed by the trial court would be more than eighty per cent of the amount recovered. Of course, the amount of the recovery on the lien claim when the trial court made the allowances was considered as being $1,273.40. No doubt, the court at that time did not have reason to feel that the allowances were too large in relation to the amount of the recovery.

Turning now to the consideration of appellants' motion to dismiss respondent's cross-appeal, we are of the opinion that this motion must be granted. The errors assigned by respondent on his cross-appeal all relate to matters which were involved in the judgment originally entered by the trial court on July 26, 1948. Appellants' notice of appeal was served August 24, 1948. Respondent's notice of cross-appeal was not served on appellants until April 6, 1949. This is not in compliance with the provisions of Rule of Supreme Court 5, 18 Wn. (2d) 4-a.

We have not overlooked the provisions of the order of this court hereinabove quoted remanding the case to the lower court for the purpose of passing upon appellants' motion to vacate or modify the original judgment. That order provided that all parties should have the right to appeal from whatever order or judgment should be entered by the superior court upon the hearing and that the same should be consolidated with and become a part of the pending appeal. However, nothing in respondent's cross-appeal relates in any manner to the action taken by the trial court with respect to appellants' motion to vacate or modify the original judgment. As previously noted, all respondent's assignments of error relate to the judgment entered July 26, 1948. The time for cross-appealing had expired many months before respondent attempted to perfect his cross-appeal. The cross-appeal is accordingly dismissed.

Appellants' motion to strike a certain portion of respondent's brief is denied.

The judgment appealed from is modified in two respects, to wit: the amount thereof is reduced from $1,038.77 to $938.77 (correcting a typographical error), and the allowance of attorney's fees in this court is reduced from $400 to $250, and as so modified the judgment is affirmed. Neither party will recover costs against the other in this court.

SIMPSON, C. J., SCHWELLENBACH, BEALS, and GRADY, JJ., concur.

---

April 25, 1950. Petition for rehearing denied.