[No. 36942.   Department One.   September 17, 1964.]

ROY MACCHIA et al., *Appellants*, v. ANTHONY M. SALVINO
et al., *Respondents* and *Cross-appellants*.*

*Michael R. Alfieri* (of *Moschetto, Alfieri & Driano*), for
appellants.

*Herbert L. Onstad* and *Max R. Nicolai*, for respondents
and cross-appellants.

HILL, J.—This is an action by Roy Macchia[1] and Western
Garment & Cap Company, Incorporated[2] to recover from
the defendants, Anthony W. Salvino and his wife, alleged

*Reported in 395 P. (2d) 177.

[1] Hereinafter called Macchia.
[2] Hereinafter called the corporation.

illegal payments made, without authority from the corporation, by the defendant, Anthony W. Salvino,[3] as general manager of the corporation, to various employees and himself.

By a cross complaint, the defendants sought to recover back salary due Salvino.

The trial court, after a 3-day trial, dismissed both the complaint and the cross complaint. The plaintiffs appeal, and the defendants cross-appeal.

■ We are satisfied that no good purpose would be served by a lengthy discussion of what the trial court called a "welter of conflicting testimony." Our investigation of the record satisfies us that the challenged findings of fact, made by the trial court, are sustained by substantial evidence; and, consequently, the assignments of error directed to the findings of fact will not be further considered. See cases from *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183, to *Robbins v. Hunts Food & Industries, Inc.* (1964), *ante* p. 289, 391 P. (2d) 713.

The facts, as found, establish that Salvino, as general manager, did not have proper authorization to make the payments complained of by the plaintiffs, which payments were denominated by the bookkeeper as "bonus" payments[4] on the books of the corporation but which were

---

[3]Hereinafter called Salvino.

[4]These "bonus" payments fall into four different categories; and the reason given by the defendant Salvino for the making of the payments is briefly stated as follows:

a. Payments to three key women employees (the wife and two sisters of Salvino) who were employed by the company from the beginning of its operation in late 1947 until discharged in 1960. These women were skilled garment workers and could have made considerably more at the piece-work rate than they realized at the hourly or weekly wages paid by the company; they also put in considerable extra time for which they had not been compensated.

b. Dolores Daugherty, the bookkeeper, who worked from May, 1952 until September, 1960 at a salary varying from $55 to $75 a week, and would have left in 1956 or 1957 for a position paying $100 a week had she not been assured that "bonus" payments would be made.

c. Ronald Salvino, a salesman, whose bonuses did not equal the commissions he was supposed to have received.

d. Anthony W. Salvino, who was to have received $500 a month

intended by Salvino to make up deficiencies in salaries, wages, and commissions theretofore paid. The trial court found all these payments to be reasonable. The plaintiff, Macchia, the president of the corporation and the owner of all of its stock except certain qualifying shares, had known it would be necessary eventually to make up these deficiencies.

We shall content ourselves with this statement and the recital of additional facts as necessary to indicate the basis from which the trial court drew the various conclusions of law on which the judgment of dismissal was based.

This action, while nominally on behalf of the corporation, is actually for the benefit of the plaintiff Macchia who now owns all of the corporate stock.

The effort to portray Macchia as one unable to read or write the English language, who knew nothing about the business of the corporation and was a pawn and a dupe for its general manager, was not convincing to the trial court.

■ The trial court concluded that Macchia had acquiesced in and consented to the making of the "bonus" payments. This conclusion was based on findings that Macchia, who was at all times the president of the corporation, knew that the wage deficiencies would have to be made up; that if he did not have actual knowledge, he could and should have known that the "bonus" payments were being made. None of such payments was made secretly; all were made on checks signed by him. The records, files and particularly the payroll files pertaining to each of the employees, the annual W-2 statements, the income tax returns, the financial statements and monthly payroll records were at all times available to Macchia for inspection, and also to any agent or servant whom he

---

but who had agreed that he would draw no salary until the corporation began making "some money," received no salary from November 15, 1947 to June 30, 1949; and, thereafter, did not receive the entire $500 a month during the last 6 months of 1949, or in 1950, 1953, and 1954; assuming that he waived all salary for the period November 15, 1947 to June 30, 1949, the "bonus" payments to him which are complained of did not equalize the deductions from the $500 a month to which he was entitled after he began to receive a salary.

might have wished, or employed, to examine said records.

*Bay City Lbr. Co. v. Anderson* (1941), 8 Wn. (2d) 191, 111 P. (2d) 771, supports the trial court's conclusion that Macchia, as president and director of the corporation, and the corporation itself had acquiesced in, consented to, and ratified the making of the "bonus" payments.

■ The trial court further concluded that Macchia and the corporation were estopped from maintaining an action to recover the "bonus" payments; the equitable estoppel is based on the fact that Macchia and the corporation made no protest and took no action to stop the making of the "bonus" payments over a 9-year period (from 1952 to 1960 inclusive), during which time Salvino, as general manager, was making the "bonus" payments in good faith and in consideration for services theretofore performed for the corporation, all of which payments were reasonable in amount. The court concluded that, under such circumstances, it would be inequitable to require Salvino to return the payments that had been made to employees or to himself.

This action was not commenced earlier than April 21, 1961.[5] The findings, which we have already discussed, negate any fraud on the part of Salvino, or other conduct that would toll the statute of limitations.

The trial court's conclusion of law that the claims of Macchia and the corporation "are barred by the statute of limitations and by laches" is, if construed literally, too broad. The statute of limitations would not bar a claim to recover the "bonus" payments made within the applicable period of limitations.

Whether an action for payments within that period should be barred by laches seems to us an academic question, in view of our determination that there are conclusions of law properly drawn from findings of fact (supported by substantial evidence) which require a judgment of dis-

---

[5] This was the date of the verification of the complaint, which was not filed until July 10, 1961; however, an answer was verified on June 19, 1961 and served the following day.

missal insofar as the claims of Macchia and the corporation are concerned.

The Salvinos, by their cross complaint, ask for judgment for $10,891.44 against the plaintiffs for unpaid salary. As to Salvino's salary, the trial court made the following finding, to which the cross-appellants assign no error:

"That the defendant, Anthony W. Salvino, at the time of the formation of the corporation agreed that he would not draw any salary until the corporation began making some money and that the salary and one-half of the profits which were not received by said defendant were not carried on the books of the corporation as salary payable or accrued salary or indicating in any other manner that the corporation was indebted to said Anthony W. Salvino for back salary and profits." Finding No. 10.

The trial court concluded that the cross complaint for back salary was barred by the statute of limitations.

■ We agree with the cross-appellants that the statute of limitations on amounts due under a contract for continuous service does not begin to run until the contract is terminated. *Trethewey v. Green River Gorge, Inc.* (1943), 17 Wn. (2d) 697, 136 P. (2d) 999; *Sibley v. Stetson & Post Lbr. Co.* (1920), 110 Wash. 204, 188 Pac. 389; *Morrissey v. Faucett* (1902), 28 Wash. 52, 68 Pac. 352; and *Ah How v. Furth* (1896), 13 Wash. 550, 43 Pac. 639. While in the *Trethewey* case considerable emphasis is placed upon the fact that the unpaid salary was at all times shown as a liability on the books of the company (which was not the case with Salvino's unpaid salary), the *Trethewey* opinion cites and relies on the other three cases, which impose no such limitation on the rule as stated.

Salvino worked for the corporation under a contract for continuous service at a salary of $500 a month. His services were terminated December 31, 1960. His cross complaint for unpaid salary was filed March 20, 1962, well within any applicable statute of limitations.

The corporate records indicate that his salary was to begin November 15, 1947. However, a finding of fact, to which no assignment of error was made, was that Salvino

agreed at the time of the formation of the corporation that he would not draw any salary until the corporation began making "some money." There is testimony that he drew no salary in 1947 ($750), in 1948 ($6,000), and none the first half of 1949 ($3,000).

Under the unchallenged finding of the trial court, there can be no recovery of this $9,750 which Salvino did not receive, as the evidence is that the corporation had not made any money up to June 30, 1949. Whether the tide began to turn in mid-1949 and the corporation was then beginning to make "some money," is not clear (it did show a profit in 1950); but, in any event, Salvino did begin drawing a salary in the latter half of 1949, and neither Macchia nor the corporation has ever objected thereto. Excluding the first 19½ months of the corporation's operations, Salvino would have been entitled to a salary for 138 months of $69,000; and the amount which he received, as shown by the payroll (including bonuses), was $68,108.56. Under his contract of employment he would be entitled to a judgment for $891.44 against the plaintiff corporation, but not against Macchia personally.

We give no consideration to the claim of the Salvinos for half of the profits, as such request was not made in their cross complaint, and no findings having been made or requested with reference thereto. It is conceded that had Macchia been paid the $500 a month authorized by the corporation, there would have been no profits. It is clear that their agreement contemplated the payment of salaries before the division of profits.

The judgment of dismissal of the complaint against Anthony W. Salvino and his wife is affirmed; the judgment of dismissal of the cross complaint against Roy Macchia is affirmed; the judgment of dismissal of the cross complaint against Western Garment & Cap Company, Incorporated, is set aside and the trial court is directed to enter a judgment against the corporation and in favor of the Salvinos in the sum of $891.44 with interest thereon from the termination of Salvino's contract of employment, *i.e.*, December 31,

1960.[6] The Salvinos, as respondents and cross-appellants, will recover their costs herein to be taxed.

OTT, C. J., ROSELLINI, HUNTER, and HALE, JJ., concur.

[6]Interest is allowed from December 31, 1960, on the basis that this is a liquidated claim. While the issue of liability and the amount thereof, if any, were hotly contested throughout, the amount, once the factual issues were determined, could be computed with exactness and without reliance on opinion or discretion. McCormick on Damages 213, § 54. See *Haynes v. Columbia Producers, Inc.* (1959), 54 Wn. (2d) 899, 344 P. (2d) 1032; *Graves v. Cascade Natural Gas Corp.* (1957), 51 Wn. (2d) 233, 316 P. (2d) 1096; and *Mall Tool Co. v. Far West Equip. Co.* (1954), 45 Wn. (2d) 158, 273 P. (2d) 652.