[No. 659-41393-1.    Division One—Panel 1.    June 28, 1971.]

GEORGE SWENSON, *Respondent,* v. HAROLD F. LOWE *et al., Appellants.*

*John D. Lawson,* for appellants.

*Cushman, Thomas & Holt* and *R. M. Holt,* for respondent.

HOROWITZ, C.J.—Plaintiff contractor sued to foreclose a materialmen's lien for an unpaid balance owing under a written residence construction contract. The owner defendants counterclaimed for damages for breach of contract. The case was tried to the court sitting without a jury. From a judgment in favor of plaintiff and dismissing defendants' counterclaim for damages, defendants appeal.

On March 24, 1967, defendants Lowe entered into a written contract with the plaintiff for the construction of a residence on defendants' property for the total price of $20,148.10, plus sales tax. The contract fixed no specific completion date. The contract contained a 1-year guarantee from date of completion against defective or faulty workmanship or materials. The contract further provided (paragraph third):

No alterations shall be made in the work shown or described by the drawings and specifications except by written memorandum agreed to by Owner and the Contractor and when so made value the work added or omitted shall be computed at that time and the amount so ascertained will be added to or deducted from the contract price.

Shortly after construction was commenced, defendant husband by letter notified the contractor that the contract be performed in accordance with its terms and that deviations be made only after defendant's written approval. Nevertheless, various departures from the contract specifications were made thereafter without the owner's written approval. Furthermore, defendant husband, who was watching the job from time to time, made progress payments without protest in sums totalling $18,795.77, the last payment being made on August 15, 1967. There is additional evidence that the requirement of a writing was waived by defendant husband's oral consent and conduct, and the court found the existence of such a waiver. The contractor ceased performance on August 15, 1967. Shortly thereafter, either in the last week of August or the first week of September, the defendants took possession of the

residence and continued in possession up to and during the time of trial which commenced in May of 1969. Meanwhile, on September 12, 1967, the contractor submitted his final billing of $3,165.65, which after certain additions and deletions from the contract price to reflect changes allegedly agreed to, represented a net increase in the contract price of $904.80, plus the sales tax.

On October 5, 1967, defendant husband wrote a letter to the contractor asking that various defects in the construction be remedied, whereupon the billing rendered would be paid. The contractor did not take the remedial action requested. Instead, on November 6, 1967, he filed a lien claim of $3,165.65, and then brought the instant action below to foreclose his claim. Defendants counterclaimed for damages on account of claimed unauthorized extras and deficiencies in performance in the sum of $5,000. At trial, the amount of damages claimed was raised to $8,309.50. After trial, the court, after making certain offsetting allowances of $625, entered judgment in favor of the contractor in the sum of $3,040.65 and ordered foreclosure of his lien. The amount of the judgment was arrived at by deducting "allowances" in the sum of $625 from the sum of $3,165.65 claimed by the contractor, and then adding a $500 attorney's fee awarded to the contractor.

■ A proper understanding of the assignments of error requires a short statement of applicable legal principles. A building contract provision requiring a written order for alterations or extras will be enforced. 13 Am. Jur. 2d *Building and Construction Contracts* § 22 (1964). However, the requirement of a writing is for the benefit of the owner, and the owner, either expressly or by conduct, may waive such a requirement. *American Sheet Metal Works, Inc. v. Haynes*, 67 Wn.2d 153, 407 P.2d 429 (1965); *Davis v. Altose*, 35 Wn.2d 807, 215 P.2d 705 (1950); *Eggers v. Luster*, 32 Wn.2d 86, 200 P.2d 520 (1948). As stated in Annot., 2 A.L.R.3d 620, 661 (1965), "where . . . the work was orally ordered, requested, directed, authorized, or consented to by the owner . . ." the requirement is deemed

waived. *Morango v. Phillips,* 33 Wn.2d 351, 205 P.2d 892 (1949); *Eggers v. Luster, supra; Bjerkeseth v. Lysnes,* 173 Wash. 229, 22 P.2d 660 (1933); *Crowley v. United States Fid. & Guar. Co.,* 29 Wash. 268, 69 P. 784 (1902). *See* 13 Am. Jur. 2d *Building and Construction Contracts* § 24 (1964).

■ The subject of waiver of a writing in the case of extras and alterations is, of course, to be distinguished from the subject of deficiencies in performance of the contract specifications. Notwithstanding the obligation to perform his contract, the contractor is not necessarily precluded from recovering the contract price called for by reason of his failure to fully perform the contract in accordance with its terms. If his performance is at least not deliberately deficient (*see Schmidt v. North Yakima,* 12 Wash. 121, 40 P. 790 (1895); *Golob v. George S. May Int'l Co.,* 2 Wn. App. 499, 468 P.2d 707 (1970)), and is substantial, he may recover the contract price less the reasonable cost of making good the deficiencies in performance. The last mentioned cost is sometimes called the cost of repair rule. *Odgers v. Held,* 58 Wn.2d 247, 362 P.2d 261 (1961); *Baldwin v. Alberti,* 58 Wn.2d 243, 362 P.2d 258 (1961); *Forrester v. Craddock,* 51 Wn.2d 315, 317 P.2d 1077 (1957); *Bernbaum v. Hodges,* 43 Wn.2d 503, 261 P.2d 968 (1953); *White v. Mitchell,* 123 Wash. 630, 213 P. 10 (1923); Annot., 76 A.L.R.2d 805 (1961). Such rule, as pointed out in *Baldwin v. Alberti, supra,* means the reasonable cost of correcting the defects is chargeable to defendant when such correction would cause no "unreasonable economic waste."

Substantial performance and cost of repair rules are defined in *White v. Mitchell, supra* at 637, as follows:

> There is a substantial performance of a contract to construct a building where the variations from the specifications or contract are inadvertent and unimportant and may be remedied at relatively small expense and without material change of the building; but where it is necessary, in order to make the building comply with the contract, that the structure, in whole or in material part, must be changed, or there will be damage to parts of the

building, or the expense of such repair will be great, then it cannot be said that there has been a substantial performance of the contract.

*See generally* 13 Am. Jur. 2d *Building and Construction Contracts* § 43 (1964).

■■ Defendants' assignments of error are addressed to certain findings dealing with both alterations and deficient performance of specifications. On the matter of alterations, the court found "that the defendants have waived whatever defences they may have had under the building contract by their subsequent oral agreements and conduct . . ." The finding makes it unnecessary to distinguish between "alterations" specifically so named in paragraph third of the contract, and "extras." Annot., 2 A.L.R.3d 620, § 8 (1965). In our opinion there is adequate evidence to support the finding of waiver. There was evidence that the defendant husband, who was himself a former contractor and carpenter, was present on the job virtually every day; that when he complained about performance and matters were explained to him, he acquiesced; he made payments from time to time on the contractor's billings without objection; on certain occasions, by his conversations he indicated approval of the contractor's work. It is true that he denied giving approval of alterations claimed by the contractor, but his testimony is contradicted by the testimony of the contractor's general manager in charge of the job and the contractor's foreman on the job. Credibility is for the trial court and we are not at liberty to substitute our views as to the evidence for that of the trial judge. *Rognrust v. Seto,* 2 Wn. App. 215, 467 P.2d 204 (1970).

Defendants further claim that the contractor's performance was deficient in various respects at the time he ceased performance on August 15, 1967. Defendants assign no error to the trial court's finding that "the plaintiff has substantially performed the building contract." Accordingly, as conceded by defendants, the proper measure of damages for deficient performance in the instant case is the reasonable cost of repair. *See, e.g., Bernbaum v. Hodges,*

*supra*, and *Baldwin v. Alberti, supra*. Such a measure of damages also applies to breach, if any, of the 1-year guarantee. *See Bernbaum v. Hodges, supra*.

The evidence relied on by defendants in support of their claim for damages rests almost entirely upon the uncontradicted testimony of their expert witness, Mr. Philip L. Ceis. He testified to the reasonable cost of remedying claimed defects on the basis of "what it would cost to go in tomorrow morning and do these things" (May 1969), but not to the reasonable cost of repair at any prior date. The trial court apparently declined to be bound by Mr. Ceis' testimony. The trial court may well have believed that some of the deficiencies did not exist. As to the "deficiencies" for which the court made an allowance, in each case the amount allowed was substantially less than Mr. Ceis estimated the cost of repair to be. The trial court could have believed that Mr. Ceis did not give sufficient reasons for his estimates on various claimed deficiencies to be persuasive; or the trial court may have been of the opinion that the reasonable cost at the date of trial in May of 1969 would not prove the reasonable cost of repair either at the date when performance of the contract reasonably should have been completed, or at the date when the contractor ceased performance on August 15, 1967. *See Pitzer v. Hercher*, 318 S.W.2d 397 (Mo. App. 1958). Indeed, the court found that the counterclaim for $8,309.50 should be dismissed

> for failure to sustain their burden of proof, and that said counter-claim was based upon the plans and specifications that were used as a part of the construction of the residence for the defendants and other plans belonging to the defendants.

The record sustains this finding, whether or not the burden of proving the reasonable cost of repair is on the owner or contractor. *See Morris v. Rosenberg*, 64 Wn.2d 404, 391 P.2d 975 (1964). The credibility of expert testimony dealing with cost estimates and their reasonableness, even though uncontradicted, is for the trier of the facts. *See State v.*

*Melrose,* 2 Wn. App. 824, 470 P.2d 552 (1970); *Rognrust v. Seto, supra;* Annot., 62 A.L.R.2d 1191 (1958). The court might have declined to credit the testimony at all. Nevertheless, he made offsetting allowances in the sum of $625 for items which are detailed in finding 6. Defendants complain that the allowances were insufficient. However, the court impliedly found that Mr. Ceis' testimony furnished the court with an inadequate basis for a greater allowance. Such an implied finding was within the trial court's power to make.

Defendants further contend that the trial court erred in not granting their motion for mistrial. They contend that certain comments or observations made by the trial court during trial showed that the court had prejudged the case on the merits. The court's comments were made in response to, and in connection with, defendants' motion to amend the amount of damages prayed for in their counterclaim from $5,000 to an amount to conform to the proof of the damages claimed at trial. At the time of the court's comments, the plaintiff had rested its case in chief and the defendants had commenced presenting evidence. When the defendants' motion for mistrial was made, six witnesses had testified on behalf of the plaintiff, one witness had testified on behalf of defendants, and 16 plaintiff's exhibits and 8 defendants' exhibits had been admitted in evidence. Mr. Ceis, however, had not yet testified to the damages ultimately claimed in the sum of $8,309.50. In response to the court's comments, defendants' counsel had stated that he thought the court was prejudging the case. Possibly defendants' counsel had in mind the fact that prior to trial the trial court had endeavored, but without success, to get the parties, particularly the defendants, to settle their controversy. The court, however, denied that he was prejudging the case.

We take judicial notice that a trial court, especially on hearing a case without a jury and therefore having the responsibility to enter findings and conclusions, cannot in the nature of things close his mind to the impressions made upon him by the testimony as it comes in. He is bound to

develop some leanings. In the course of the trial, particularly in connection with making rulings, he may indicate what his leanings are or his then view of the merits of any contentions advanced. Such indications may be unsettling to the party adversely affected, but are not necessarily error. The formation by the court of a tentative conclusion or the statement of his then views in a case tried to the court without a jury, do not necessarily mean that the court has closed his mind to considering the effects of further evidence or additional argument. *See Kay Corp. v. Anderson,* 72 Wn.2d 879, 436 P.2d 459 (1967). We must give appropriate weight to the court's statement that he was not prejudging the case. A careful reading of the record in this case shows that the trial court's views were merely tentative. A statement of leanings is not a prohibited prejudgment. In the instant case, the court not only allowed offsets in the sum of $625 to the plaintiff's claim which he might easily have disallowed for want of persuasive evidence of amount, but he also reduced attorney's fees for the plaintiff from the sum of $1,000, which he stated would have been otherwise recoverable, to the sum of $500 because of performance deficiencies which the court found to exist. We find no error.

■ Defendants finally contend that the court erred in allowing attorney's fees to the plaintiff in either the superior or supreme courts under RCW 60.04.130. Defendants claim that they had to assert their counterclaim because of the plaintiff's refusal to make any allowance whatsoever for the performance deficiencies which the court found to exist. There is no question that the court had power to award attorney's fees to the plaintiff, both for services at trial and services on appeal. *See Gannon v. Emtman,* 66 Wn.2d 755, 405 P.2d 254 (1965); *Hopkins v. Ulvestad,* 46 Wn.2d 514, 282 P.2d 806 (1955); *Davis v. Altose,* 35 Wn.2d 807, 215 P.2d 705 (1950); *Forrester v. Craddock,* 51 Wn.2d 315, 317 P.2d 1077 (1957). It is unclear from the record, however, whether the parties stipulated that the amount of attorney's fees could be fixed by the court without evi-

dence. However, the legal services for which the fee was fixed were rendered in litigation before the court passing on the value of such services, and the court, on the basis of his familiarity with the case derived from his participation, was, despite the absence of opinion testimony, empowered to determine the reasonableness of the fee to be awarded. *Sherwood v. Wise*, 132 Wash. 295, 232 P. 309, 42 A.L.R. 1219 (1925); 7 Am. Jur. 2d *Attorneys at Law* § 269 (1963). Whether, if defendants had prevailed more substantially than they did, it would have been an abuse of discretion to award plaintiff attorney's fees, or whether defendants would then have been entitled to an award of attorney's fees under RCW 60.04.130, we need not determine. Indirectly, however, they benefited from the $500 reduction in otherwise recoverable fees.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.