[Nos. 32885-9-I; 32886-7-I; Division One. January 17, 1995.]
32930-8-I.

PANTHER LAKE HOMEOWNER'S ASSOCIATION, *Respondent,* v. HANS C. JUERGENSEN, ET AL, *Appellants.*

*William N. Snell,* for appellants.

*David R. Riley* and *Weinstein, Fischer, Riley, Erickson & Wolf,* for respondent.

BAKER, A.C.J. — Hans and Linda Juergensen, Jim and Diane Guthrie, and Stephen and Stella Soraparu (Lot Owners) appeal from summary judgment and an award of attorney fees in favor of Panther Lake Homeowner's Association (Association) in separate actions by the Association to foreclose on liens against their homes for unpaid Association assessments. Lot Owners contend material issues of fact as to the availability of defenses to the foreclosures preclude summary judgment and that the court abused its discretion in determining the amount of the award of attorney fees awarded to the Association. We affirm.

Lot Owners within the Panther Lake subdivision are members of the Association, and have one vote per lot. The Association's articles of incorporation and bylaws (bylaws) permit the Association to impose special assessments for capital improvements and to enforce such assessments by lien. Assessments require the assent of two-thirds of the members voting.

The subdivision is served by a private road which was originally unpaved. Despite the fact that some members claimed it was the developers' responsibility to have the road paved and that they should not have to pay for the paving, the board of directors contracted to have the road paved. In October 1991 the Association membership voted to impose a special assessment for paving the road. The

vote was 14 in favor, 1 opposed, and 4 abstentions. Three votes in favor were by proxy which specified that the liens would be assigned to the developers. Teri and Rex Jennings (non-party members) declare that the resolution to assign the liens to the developers was the most important factor in their vote. After the vote, the developers refused to accept the assignment.

Lot Owners were not satisfied with the location, width or manner of construction of the road, and did not pay their road assessments. Consequently, the contractor was not fully paid and filed a lien against the Association. Association member F.L. Jacobs paid the contractor and took an assignment of the lien. According to Jacobs, the present action to foreclose on the Association's liens was then authorized by a unanimous vote of the five Association directors. The directors were Mark Striker, David Pigott, Jacobs and two other members. Striker and Pigott were also developers of the Panther Lake subdivision. According to Jennings, Ron Simmons, and Deanne Guthrie, the Association membership voted at a March 1992 meeting to *not* foreclose on the liens and instead turn the matter over to the developers. In contrast, Striker declares the members of the Association "have never voted to refrain from liening members who failed to pay the special assessment, and have never voted to refrain from proceeding with this foreclosure action."

The Association filed suit against Lot Owners in separate actions to foreclose on the liens.

The trial court granted summary judgment for the Association against all three Lot Owners.

Lot Owners rely on the inadequacy of the subdivision road as a defense to the Association's assessments. They further contend the Association abused its discretion in contracting for or accepting the road as built. Lot Owners' evidence indicates several problems with the road, whether or not it was built to specifications. If the inadequacy of the road provides a defense to the foreclosures, there are material issues of fact as to such inadequacy.[1]

---

[1]Lot Owners also contend there are problems with the subdivision's water system which they argue also provides a defense to the Association's assessments. Lot Owners' defenses to water system assessments present the same issues as the road assessment.

The dispositive legal issue is whether an inadequacy in a capital improvement for which assessments are made by a homeowners association allows a member of that association to refuse to pay the assessments. Lot Owners characterize the Association's decision to build, pay for or otherwise accept the road as built as unreasonable and an abuse of discretion. Lot Owners rely on *Rodruck v. Sand Point Maintenance Comm'n*, 48 Wn.2d 565, 295 P.2d 714 (1956) for the proposition that it is a defense to lien foreclosures that assessments were unreasonable or were the result of an abuse of discretion. In *Rodruck* members of a residential community maintenance commission challenged the commission's imposition of assessments to pay for a levy imposed on commission property by the City of Seattle. Members sought, *inter alia*, declaratory relief that the restrictive covenants which created the commission were void. The commission sought judgment against the members for their unpaid assessments. *Rodruck*, 48 Wn.2d at 569. The members argued that the

> deeds and the bylaws of the commission are too indefinite to fulfill the requirements of a covenant or promise; that there is no fixed limit to the amount that may be charged and no standard to guide the board of trustees in making the assessments.

*Rodruck*, 48 Wn.2d at 576-77. The court rejected this argument.

> The right to demand payment of the charges levied carried with it an obligation on the part of the commission to exercise the discretion vested in it fairly and within the scope of the corporate functions outlined in its charter and bylaws. Appellants, as members of the commission and subsequent grantees under the Hayes Investment Company deeds, are bound by a sound exercise of that discretion. *Members may attack assessments deemed to be unreasonable and the result of an abuse of discretion*, but the plan of operation does not fail in its entirety merely because such discretion has been vested in the commission.

(Italics ours.) *Rodruck*, 48 Wn.2d at 577.

590

■ *Rodruck* does not stand for the proposition that Lot Owners may challenge the Association's exercise of its discretion by refusing to pay their assessments. Rather, we read *Rodruck* to simply recognize that members may seek declaratory relief.

The Association relies on *Rivers Edge Condominium Ass'n v. Rere, Inc.*, 390 Pa. Super. 196, 568 A.2d 261 (1990). In *Rivers Edge* a condominium owner refused to pay assessments, contending the association had failed to maintain and repair common areas. The project had structural defects and the association had brought an action against the project engineers, developers and contractors for the defects. The court determined that the defects in the condominium did not provide the individual owner with a defense to the assessments.

> [A]ppellant's action in withholding his condominium assessments, even assuming that he has suffered the property damage he alleges, is not justified by the language of the [bylaws], the statutes of this Commonwealth, or general public policy considerations.

*Rivers Edge*, at 199.

Only the *Rivers Edge* court's considerations of public policy are applicable here.[2] While the court did not hold that such considerations precluded the unilateral withholding of assessments, the court noted that

> [a] condominium form of ownership in real estate succeeds, because unit owners agree to cooperate in the maintenance of common elements. When the appellant purchased his units at Rivers Edge, he chose to accept the benefits and obligations which accompany this form of real estate ownership.

*Rivers Edge*, at 200.

We agree with the reasoning in *Rivers Edge* and hold that defects in the Association's capital improvements do not provide members with a defense to assessments imposed to pay

[2]The bylaws of the association in *Rivers Edge* specifically required that assessments be paid even if the owner was not receiving the required services. *Rivers Edge*, at 199. No such provision appears in this Association's bylaws.

for such improvements. As in *Rivers Edge*, any dispute over defects in the construction of Association property was between the Association and the developers or contractors. Whether legal action would be taken in the event of a dispute was for the board or voting Association membership to decide. Lot Owners' remedies are limited to making their wishes known to the Association, casting their votes, and seeking declaratory relief if the Association acts beyond its authority. Lot Owners are not permitted to compound the Association's problems by unilaterally withholding assessments for capital improvements.

 Lot Owners also argue that because offsets are allowed in ordinary lien foreclosure actions, they should, by analogy, be made available as a defense to foreclosures by the Association. We disagree. The relationships between the parties and the offsetting liabilities in normal foreclosure actions and the present case are not analogous. In foreclosure cases cited by Lot Owners, offsets were based on a breach or liability of the party against whom the offset was asserted. *Seattle First Nat'l Bank, N.A. v. Siebol*, 64 Wn. App. 401, 405, 824 P.2d 1252 (offset against bank for lost profits based on bank's breach of promise to provide inventory financing), *review denied*, 119 Wn.2d 1010 (1992); *Swenson v. Lowe*, 5 Wn. App. 186, 188, 486 P.2d 1120 (1971) (offset against contractor for deficiencies in contractor's performance); *see also Davis v. Altose*, 35 Wn.2d 807, 812-13, 215 P.2d 705 (1950). Here, Lot Owners seek to offset deficiencies in the road against their assessments. An offset based on the contractor's breach may be asserted by the Association against the contractor, but not by members against the Association's assessments. Allowing such an offset would prevent the Association from recovering the amount it expended on the Lot Owners' behalf. Such an offset would impoverish the Association and its other members and create a windfall for Lot Owners.

Summary judgment for the Association is affirmed.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

GROSSE and WEBSTER, JJ., concur.